## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY BUCKS, LLC, *et al.* | No. 23-10758 (KBO) |
| Debtors. | |
| LB NEWHOLDCO, LLC and LUCKY BUCKS, LLC, | Adversary Proceeding |
| Plaintiffs, | No. 25-50965 (KBO) |
| v. | |
| TRIVE CAPITAL MANAGEMENT LLC, *et al.*, | |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANTS ANIL DAMANI, LUCKY BUCKS VENTURES, INC., AND LBV27, LLC'S MOTON TO DISMISS PLAINTIFFS' COMPLAINT

BAYARD, P.A.
Ericka Johnson
Steven D. Adler
600 N. King Street, Suite 400
Wilmington, DE 19801

Dated:   September 5, 2025
       Wilmington, Delaware

CHILIVIS GRUBMAN
Lauren A. Warner
Scott R. Grubman
Brittany M. Cambre
1834 Independence Square
Atlanta, Georgia 30338
*Counsel for Defendants Anil Damani, Lucky Bucks Ventures, Inc., and LBV27, LLC*

## Table of Contents

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ............................ 1

SUMMARY OF THE ARGUMENT ......................................................................... 2

STATEMENT OF FACTS .................................................................................... 3

    A.   Mr. Damani Grew Lucky Bucks into a COAM Leader. ................................... 3

    B.   Lucky Bucks Makes the OpCo Distribution. .................................................. 4

    C.   Lucky Bucks Files for Chapter 11 Bankruptcy ............................................. 5

    D.   Reorganized Lucky Bucks Files the Georgia Lawsuit, and Faces Significant Hurdles ..... 6

    E.   Reorganized Lucky Bucks Engages in Forum Shopping and Re-Files its Claims in This Court. ......................................................................................................... 9

ARGUMENT ................................................................................................. 10

    I.   Legal Standard for Failure to Sate a Claim. ............................................... 10

    II.   This Court Should Not Allow Plaintiffs to Engage in Bad Faith Forum Shopping. ........ 11

    III.   The OpCo Plan Release Bars All Claims, and the Carveout Provision Does Not Apply. 14

    IV.   The Actual Fraudulent Transfer Claims Fail. .............................................. 15

        A.   The Fraudulent Transfer Claims Lack the Requisite Specificity and Are Woefully Inadequate as to the Damani Defendants. ............................................. 17

        B.   The Lenders Cannot Recover Transfers They Approved. ..................... 19

    V.   There's No Claim for Aiding and Abetting Breach of Fiduciary Duty under Delaware Law Without an Underlying Breach. ............................................................ 20

    VI.   Attorneys' Fees and Punitive Damages .................................................... 21

    VII.  Declaratory Judgment ......................................................................... 21

CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aspect Software Parent, Inc.*, 578 B.R. 718 (Bankr. D. Del. 2017) ............................................. 10

*Ballantyne Brands, LLC*, 656 B.R. 117 (Bankr. W.D.N.C. 2023)................................................. 17

*Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460
(Del. Super. Ct. Sept. 29, 2021)........................................................................................................ 21

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006)........................................................ 5

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............................................ 18

*Chavez v. Dole Food Co., Inc.*, 836 F.3d 205 (3d Cir. 2016)..........................................................11

*Kramer v. Chin (In re Chin)*, 492 B.R. 117 (Bankr. E.D.N.Y. 2013) ........................................... 16

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.,* 350 F. Supp. 2d 620
(E.D. Pa. 2004)................................................................................................................................... 14

*DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799
(Del. Super. Ct. June 10, 2024).......................................................................................................... 21

*E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) .................................................. 13

*Ewideh v. Homesite Ins. Co. of the Midwest*, No. 1:23-CV-812, 2023 WL 5170379
 (M.D. Pa. July 17, 2023)................................................................................................................... 15

*Fedders N. Am., Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009) .......................................................... 15

*FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733 (E.D. Pa. 2005)................................11

*Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006).................................................................... 19

*Geron v. Craig (In re Direct Access Partners, LLC)*, 602 B.R. 495 (Bankr. S.D.N.Y. 2019) ...... 16

*Hechinger Inv. Co., of Del.*, 327 B.R. 537 (D. Del. 2005)............................................................. 15

*Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ........................................................11

*J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552 (2007) .................................... 21

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993). ........................................................................... 10

*Liquid Holdings Grp., Inc.*, 2018 WL 2759301 (Bankr. D. Del. 2018) ........................................ 17

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ........................................................ 10

*Lyondell Chem. Co.*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014) .......................................... 19

*Menser*, No. 18-65681-JWC, 2021 WL 4484894 (Bankr. N.D. Ga. Sept. 30, 2021). ................. 15

*Mosiman v. Madison Cos., LLC*, 2019 WL 203126 (D. Del. Jan. 15, 2019) ........................... 11, 17

*NewStarcom Holdings, Inc.*, 547 B.R. 106 (Bankr. D. Del. 2019) ................................... 20

*Opus East, LLC*, 528 B.R. 30 (Bankr. D. Del. 2015) .................................................. 15

*Our Alchemy, LLC*, 2019 WL 4447519 (Bankr. D. Del. Sept. 16, 2019) ............................. 20

*Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) ......................... 17

*Stephen A. Wheat Tr. v. Sparks*, 325 Ga. App. 673 (2014) ....................................... 21

*Syntax-Brillian Corp.*, 2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) ........................... 17

*Tribune Co. Fraudulent Conveyance Litig.*, MDL No. 11-md-2296, 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ............................................................................. 19

**Statutes**

28 U.S.C. §§ 2201 and 2202 ............................................................................. 21

11 U.S.C. §§ 548(a)(1)(A) .............................................................................. 15

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On June 2, 2025, Plaintiffs LB NewHoldCo, LLC ("NewHoldCo") and Lucky Bucks, LLC ("Lucky Bucks" and, with NewHoldCo, "Reorganized Lucky Bucks") filed their complaint [Adv. Dkt. 2] (the "Complaint") commencing this adversary proceeding against 19 Defendants, including Anil Damani, Lucky Bucks Ventures, Inc. ("LBVI"), and LBV27, LLC ("LBV27", together with Anil Damani and LBVI, the "Damani Defendants"). *See* Compl., Adv. Dkt. 2. Plaintiffs seek to recover a $203.6 million distribution made to Lucky Bucks' equity holders in July 2021 (the "OpCo Distribution"), which was funded by a credit facility provided by leading lenders who now own most of the Company. Plaintiffs assert claims for avoidance and recovery of actual fraudulent transfers against LBV27 and Damani under the Bankruptcy Code (Count 1), Delaware law (Count 2), and Georgia law (Count 3), and for aiding and abetting breach of fiduciary duty under Delaware Law against Mr. Damani (Count 5). Plaintiffs also seek to recover attorney's fees and punitive damages under Georgia law against all Defendants (Counts 7, 8).

On September 5, 2025, Damani Defendants filed a *Motion to Dismiss Plaintiff's Complaint* (the "Motion"). This is the Damani Defendants' brief in support of the Motion. The Trive Defendants,[1] Management Defendants,[2] and defendant Tony Kassam are also filing motions to dismiss the Plaintiff's Complaint contemporaneously herewith.[3]

---

[1]    The Trive Defendants are defendants Trive Capital Management LLC, Trive Capital Fund III LP, Trive Capital Fund III-A LP, TCFIII Luck LP, TCFIII Luck SPV LP, TCFIII Luck Acquisition LLC, TCFIII Luck Holdings LLC, Quantum Gaming Corp., Southern Star Gaming, LLC, and Shravan Thadani.

[2]    The Management Defendants are defendants Manu Sekhri, James Boyden, Ryan Bouskill, Hassan Ijaz and Seven Aces Holdings ULC.

[3]    Damani Defendants incorporate by reference the defined terms not expressly stated herein, descriptions of documents, and related arguments made by the Trive Defendants, the Management Defendants, and Mr. Kassam in their respective motions to dismiss generally, and as set forth more specifically herein.

## SUMMARY OF THE ARGUMENT

The debtor is Reorganized Lucky Bucks, which emerged from chapter 11 bankruptcy proceedings filed two years ago by Lucky Bucks and its parent company Lucky Bucks HoldCo, LLC (n/k/a LB NewHoldCo, LLC).  Compl. ¶¶98-100.  Operating under the trade name Arc Gaming and Technology ("Arc Gaming"), Plaintiffs took over Lucky Bucks and have been woefully inapt at replicating Lucky Bucks' years'-long record of successes and growth. *Id.* ¶18. Rather than admit failure, Plaintiffs filed an expansive lawsuit in Georgia that has gone nowhere in almost 2 years, and now seek to repackage some of those claims in this Court.  Plaintiffs' claims fare no better here and should be dismissed entirely as to Mr. Damani, LBVI, and LBV27.

First, Plaintiffs have engaged in flagrant forum shopping, subjecting Mr. Damani to some of the same claims that he has been fighting in Georgia since January 2024, only for Plaintiffs to voluntarily remove those claims and refile them here.  Second, notwithstanding the gamesmanship, Plaintiffs' Complaint still fails *en toto* because Plaintiffs' chapter 11 confirmation plan documents include broad release language that prohibits the claims and the plan's concomitant carveout does not apply.  If Plaintiffs' claims somehow survive despite its forum shopping and the release language, the Complaint should still be dismissed.  Plaintiffs fail to state a claim for actual fraudulent transfer; the Complaint is devoid of any allegations that the OpCo Distribution was made "with actual intent to hinder, delay or defraud" creditors, fails to comport with the heightened pleading requirements of Rule 9(b), and seeks to recover transfers that were expressly approved. Plaintiffs' claim for aiding and abetting breach of fiduciary duty fails in the absence of an underlying breach, which Plaintiffs do not adequately allege.  Similarly, Plaintiffs' claims for attorney's fees and punitive damages fail without a valid underlying substantive claim.  Finally,

the law prohibits Plaintiffs from simply repackaging the affirmative claims as a claim for declaratory judgment.

## STATEMENT OF FACTS

### A.     Mr. Damani Grew Lucky Bucks into a COAM Leader.

Lucky Bucks was formed in 2011 by Mr. Damani and grew to become one of the largest members of the Coin Operated Amusement Machine ("COAM") industry in Georgia by the time he left its helm in 2020.  Compl. ¶¶40-41.  COAM machines are skills-based amusement machines, most of which are placed in gas stations and convenience stores, that allow players to accumulate points that they can use towards in-store credit. *Id.* ¶40. Lucky Bucks was a master licensee, legally authorized to own and place COAM machines at licensed locations in Georgia. *Id.* ¶¶41-44.  The COAM industry is heavily regulated by the Georgia Lottery Corporation ("GLC"). *Id.* ¶41. A master license holder cannot also have a location license, nor can it have an ownership interest in a location where its machines are placed. Instead, a master licensee contracts with a location licensee. *Id.* Both master and location licenses, and the requisite location contracts, are issued by the GLC and carry substantial monetary value. *Id.* ¶42. Under Mr. Damani's stewardship, Lucky Bucks' growth in Georgia was based in part on acquiring other master licenses and location contracts. *Id.* ¶44.

In 2016, Mr. Damani sold 51% of his equity interest in Lucky Bucks, retaining his remaining equity through Lucky Bucks' former parent company, LBVI. Following a subsequent sale that further reduced his equity to 30%, the majority 70% ownership rested with an entity whose then-parent was a publicly traded company on the Toronto Stock Exchange. *Id.* ¶¶45-47.

In August 2020, certain Trive Defendants acquired an indirect, majority equity interest in Lucky Bucks by purchasing a majority stake in Lucky Bucks's parent company, Lucky Bucks HoldCo, LLC ("HoldCo").  *Id.* ¶¶4, 19-29, 60-61.  Trive, through various entities, indirectly held

75% of HoldCo's equity, while Mr. Damani indirectly held the remaining 25%. *Id*. ¶¶ 45-47, 60-63. At that point, Plaintiffs allege, Trive "secured direct and indirect control" over Lucky Bucks. *Id*. ¶61. Trive "exercised de facto control" over Lucky Bucks, using its "sole authority to approve almost any material corporate act, including distributions, taking on additional debt, approving budgets, purchasing assets, or issuing equity or ownership interests," *id*. ¶62; appointing two of the three board members (Menu Sekhri and James Boyden), while Mr. Damani through LBVI appointed one (Tony Kassam), *id*. ¶63; and inserting its then-managing director Sharavan Thadani "directly into the Company's day-to-day affairs," *id*. ¶¶4, 64.

Plaintiffs allege that Defendants caused Lucky Bucks to acquire new master licenses at inflated prices. *Id*. ¶66. Plaintiff also allege that Defendants then used Lucky Bucks' "artificially inflated financials" to convince prospective lenders to provide new debt, which was used to repay existing debt and fund subsequent distributions. *Id*. ¶6.

## B.    Lucky Bucks Makes the OpCo Distribution.

In February 2021, Lucky Bucks began pursuing financing that culminated in a new credit facility to refinance an existing credit facility and fund a distribution to its equity holders. *Id*. ¶¶69, 76-77. Negotiations with prospective lenders, led by Macquarie Capital Funding LLC ("Macquarie") which "agreed to act as administrative agent and collateral agent" for itself and the other lenders, continued for several months. *See id*. ¶¶70-76. Plaintiffs admit that Macquarie conducted extensive diligence on Lucky Bucks, raising "various diligence questions," to which Lucky Bucks and Mr. Thadani responded. *Id*. ¶74.

On July 30, 2021, Lucky Bucks entered into a senior secured credit facility with certain lenders "in the aggregate amount of approximately $535 million" (the "OpCo First Lien Credit Facility.") *Id*. ¶76. It was clear at the outset, through the express terms of the OpCo First Lien

Credit Facility documents, that the proceeds would be used to repay the Company's existing facility and fund a $203.6 million pro rata distribution to HoldCo's ultimate equity owners (the "OpCo Distribution").[4]  *Id*. ¶¶70-83.   Over the next 18 months, Lucky Bucks Holdings LLC ("Holdings"), which was formed to sit as a new parent company above HoldCo, consummated two additional dividend recapitalization transactions that have been separately challenged by Holdings and are not the subject of this Complaint. *Id.* ¶92.  Plaintiffs now want a do-over of the OpCo Distribution.

### C.    Lucky Bucks Files for Chapter 11 Bankruptcy.

After a business downturn, and almost two years after the OpCo Distribution at issue, Lucky Bucks, HoldCo, and Holdings each filed voluntary chapter 11 petitions in this Court on June 8 and June 9, 2023. *Id.* ¶96.  On July 28, 2023, the Court entered its order[5] confirming Lucky Bucks' and HoldCo's Joint chapter 11 plan (the "OpCo Plan"),[6] which resulted in the OpCo lenders receiving 100% equity in both debtors in full satisfaction of their claims.[7]  The OpCo Plan included a broad release of all pre-Effective Date causes of action against any "Released Parties," defined to include Mr. Damani, LBVI, and LBV27.[8] *Id.* ¶99. On October 2, 2023 (the "Effective Date"),

---

[4]     On a motion to dismiss, the Court may consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256,260 (3d Cir. 2006) (internal quotations omitted).

[5]     *See* Findings of Fact, Conclusions of Law, and Order Confirming the OpCo Debtors' Joint Chapter 11 Plan and Approving the Disclosure Statement as it Relates Thereto for Case Nos. 23-10757 and 23-10758 [Dkt. 214] (the "Confirmation Order").  Immediately after the commencement of the Chapter 11 Cases, an ad hoc group of the Holdings PIK Noteholders moved to convert the Holdings Chapter 11 Case, which was being jointly administered with the OpCo Chapter 11 Cases, to a chapter 7 liquidation. The Court declined and the Holdings Chapter 11 Case was held in abeyance pending resolution of the OpCo Chapter 11 Cases.  Compl. ¶97.

[6]     *See* First Amended Joint Chapter 11 Plan for Lucky Bucks, LLC and Lucky Bucks HoldCo LLC, Case No. 23-10758 (Bankr. D. Del. July 22, 2023) [Dkt. 187].

[7]     OpCo Plan [Dkt. 187], Art. III.B.2(b) and III.B.3(c).  After the Effective Date, The Court converted the Holdings Chapter 11 case to a Chapter 7 case and appointed Marc Abrams as trustee.  Compl. ¶100.  Mr. Abrams is currently pursuing claims against the Mr. Damani, LBVI, the Trive Defendants, and the Management Defendants regarding distributions from the sale of Notes in November 2021 and January 2022.

[8]     *See* OpCo Plan, [Dkt. 187], art. I.A (defining "Released Party" to include "Sponsors" and their "Related Parties"); *id.* (defining "Related Party" to include an extensive list of related persons and entities, including "current

Lucky Bucks and HoldCo (n/k/a LB NewHoldCo, LLC) emerged as reorganized debtors.[9] *Id.* ¶¶ 98-100. Lucky Bucks now bears the trade name of Arc Gaming. *Id.* ¶18.

### D.     Reorganized Lucky Bucks Files the Georgia Lawsuit, and Faces Significant Hurdles.

On January 2, 2024, Reorganized Lucky Bucks – under the name of Arc Gaming – filed a lawsuit in Georgia state court against 22 defendants, which included Mr. Damani and Mr. Kassam, along with another former Lucky Bucks executive, 6 low-level managerial, sales rep, and dispatch employees, 10 competitor COAM business, and other purported straw entities and related individuals, for an alleged scheme to defraud the company (the "Georgia Lawsuit").[10] *Id.* ¶102. The Georgia Lawsuit had twelve separate counts, including *inter alia*, claims for breach of fiduciary duty and fraudulent transfer under Georgia law, and sought to recover the value of the OpCo Distribution.

Reorganized Lucky Bucks has faced several hurdles in the Georgia Litigation; some it failed to overcome, and others remain pending.  Reorganized Lucky Bucks sought entry of a temporary restraining order, which the Fulton County Superior Court promptly and overwhelmingly rejected.[11]  After a new judge was assigned to the case, considered the defendants'

---

and former directors, managers, [and] officers," "equity holders … whether such equity interests are held directly or indirectly," "affiliated investment funds or investment vehicles," and "subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, [and] agents").

[9]     Shortly after the Effective Date, the Court converted Holdings' chapter 11 case to chapter 7, and Marc Abrams was subsequently appointed as the chapter 7 trustee of the Holdings estate (the "Holdings Trustee").  *See* Order Converting Lucky Bucks Holdings LLC's Case from Chapter 11 to Chapter 7, Case No. 23-10756 (KBO) [Dkt. 5].

[10]     *See Arc Gaming and Technologies, LLC v. Anil Damani, et al.*, No. 24-cv-131 (Super. Ct. Fulton County Jan. 2, 2024).  A true and correct copy of the current docket in the Georgia Lawsuit ("Georgia Docket") is attached a Ex. A.  The twelve-count Complaint alleged violations of the Georgia RICO statute, misappropriation of trade secrets, trover, conversion, breach of fiduciary duty, fraud, unauthorized access to a computer system, breach of contract, avoidance of fraudulent transfers, improper dividends, attorney's fees under O.C.G.A. §13-6-11, and punitive damages.

[11]     *See* Georgia Order Denying Temporary Restraining Order, Jan. 12, 2024, attached as Ex. B.  The Court held a hearing on January 10, 2024 and entered its order denying the temporary restraining order shortly thereafter on January 12.  *Id.* at 1.  This order was signed by Judge Eaton.

twelve motions to dismiss, and heard extensive oral argument, the Court entered an Order on September 23, 2024 dismissing three claims outright and directing Lucky Bucks to refile the remaining claims with specificity.[12]    The Court also denied Lucky Bucks' Motion for Reconsideration of the September 23 Order.[13]    While the first round of motions to dismiss were pending, the Court denied Reorganized Lucky's Bucks' motion to transfer the case to the Business Court Division.[14]    The Court also has yet to rule on pending motions for protective order filed by several defendants, including Mr. Damani and related third-party entities, regarding Lucky Bucks' overly broad and excessively burdensome discovery requests, which effectively placed nearly all discovery on hold.[15]    There's also a pending motion for summary judgment filed by an entity defendant and pending motions for judgment on the pleadings, all of which identify myriad fatal flaws in Reorganized Lucky Bucks' Georgia case.[16]

Reorganized Lucky Bucks filed its First Amended Complaint in the Georgia Lawsuit on October 23, 2024, restating its claims.  Mr. Damani, Mr. Kassam, and several other defendants moved to dismiss the First Amended Complaint, which suffered from the same pleading deficiencies that warranted dismissal of the initial Complaint; those motions remain pending.  In

---

[12]    *See* Georgia Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, Sept. 23, 2024, attached as Ex. C.  "The Court finds that Lucky Bucks' claims for misappropriation of trade secrets, trover, and conversion fail as a matter of law and should be dismissed. As to the remaining counts, the Court finds that Lucky Bucks failed to satisfy the pleading standard and is required to replead them to cure the deficiencies." *Id.* at 3.  This order was entered by Judge Benton.

[13]    *See* Georgia Order Denying Plaintiff's Motion for Partial Reconsideration, Nov. 20, 2024, attached as Ex. D. This order was signed by Judge Benton.

[14]    *See* Georgia Order Denying Plaintiff's Motion to Transfer to Metro Atlanta Business Case Division, June 11, 2024, attached as Ex. E.  This Order was signed by Judge Glanville.

[15]    For a list of the pending motions, see the Georgia Docket, Ex. A.

[16]    *Id.*

the interim, the case was assigned to another judge who recused herself and then yet another judge who subsequently entered an order appointing a special master.[17]

Rather than face what would likely have been another dismissal of its claims, albeit without another chance to re-plead, Reorganized Lucky Bucks filed its Second Amended Complaint in the Georgia Lawsuit on June 5, 2025, which omitted certain claims against Mr. Damani and Mr. Kassam.  The Second Amended Complaint in the Georgia Lawsuit no longer includes a claim for breach of fiduciary duty (Count II) against Mr. Kassam, a claim for fraudulent transfer (Count VI) against Mr. Damani and Mr. Kassam, or a claim for improper dividends (Count VII) against Mr. Kassam.[18]  The previously filed motions to dismiss are currently being considered by the special master as applied to the Second Amended Complaint.[19]

Not only has the Georgia Lawsuit proved difficult in its own right, it also created significant issues for Reorganized Lucky Bucks in the ongoing bankruptcy proceedings.  On January 23, 2024, shortly after the Georgia complaint was filed, the Holdings Trustee filed an adversary proceeding to unwind the Chapter 11 Plan on the grounds that Lucky Bucks and HoldCo had failed to disclose the existence of the Georgia claims.[20]  After this Court denied Reorganized Lucky Bucks' motion to dismiss the adversary proceeding complaint, the Holdings Trustee and Reorganized Lucky

---

[17]      *See* Georgia Voluntary Recusal Order, Jan. 9, 2025, signed by Judge Williams, attached as Ex. F; Georgia Order Appointing Special Master, June 11, 2025, attached as exhibit G.  This Order was signed by Judge Barwick, to whom the case is still assigned.

[18]      *See* Second Amended Complaint, June 5, 2025, attached as Ex. H.  Reorganized Lucky Bucks did not file a motion or any other affirmative pleading with its Second Amended Complaint.  *See* Georgia Docket, Ex. A. It simply omitted certain claims, which it refiled here 3 days prior.

[19]      *See* Georgia Order Setting Status Conference, June 26, 2025, attached as Ex. I.

[20]      *See* Complaint for Revocation Or, In the Alternative, Equitable Relief, *In re Lucky Bucks, LLC, et al.*, No. 23-10758 (KBO) (Bankr. D. Del. Jan. 23, 2024) [Dkt. 339].

Bucks reached a settlement agreement to resolve that action on August 16, 2024.[21]  They agreed the Holdings estate would, *inter alia*, receive a $2.75 million up front payment and share in up to 40% of any recovery on the Georgia Lawsuit's fraudulent transfer/dividend claims.  Afterward, Reorganized Lucky Bucks and the Holdings Trustee began cooperating under a common interest agreement.  HoldCo's chapter 11 case was closed on September 25, 2024.[22]

Importantly for purposes of this motion, upon learning of the Holding Trustee's adversary proceeding complaint against Reorganized Lucky Bucks, Mr. Damani and other defendants in the Georgia Lawsuit moved to stay that case pending a resolution of the issues raised in the adversary proceeding.[23]  Central to the arguments was the question of who is the proper party in interest to recover the OpCo Distribution for the fraudulent transfer claim.  Reorganized Lucky Bucks actively opposed the stay request, instead arguing the absence of any basis in law or fact to link the Georgia Lawsuit to the claims in the adversary proceeding.  The Georgia Court denied the motion to stay, relying on language that Reorganized Lucky Bucks and Holdings included in an order to this Court stating its intention not to interfere with or stay the Georgia Lawsuit.[24]

### E.    Reorganized Lucky Bucks Engages in Forum Shopping and Re-Files its Claims in This Court.

Reorganized Lucky Bucks asserts the same claims against Mr. Damani in this case that it removed from its Second Amended Complaint in the Georgia Lawsuit.[25]  In so doing, it reignited

---

[21]    *See* Trustee's Motion to Approve Settlement Agreement, *In re Lucky Bucks, LLC, et al.*, No. 23-10758 (KBO) (Bankr. D. Del. Aug. 16, 2024) [Dkt. 363], and Order Granting Trustee's Motion to Approve Settlement Agreement [Dkt. 366].

[22]    *See* Order Closing Chapter 11 Case of Lucky Bucks HoldCo, LLC, *In re Lucky Bucks, LLC, et al.*, No. 23-10758 (KBO) (Bankr. D. Del. Sept. 25, 2024) [Dkt. 370].

[23]    *See* Georgia Docket, Ex. A, reflecting Defendant Anil Damani's Notice of Joinder.  There were several motions, responses, and replies related to the motions to stay, which would introduce unnecessarily voluminous documents into the record.  The documents are public records, available via Georgia's Odyssey filing portal.

[24]    *See* Georgia Order Denying Defendants' Motions to Stay, May 21, 2024, attached as Ex. J.

[25]    The restated claims are Count 3, fraudulent transfer claim against Mr. Damani under Georgia law, and Count 6, breach of fiduciary duty against Mr. Kassam under Georgia law.  Counts 7 and 8 seek attorney's fees and punitive

its dispute with the Holdings Trustee, who has since alleged that Reorganized Lucky Bucks'
decision to refile its Georgia claims regarding the OpCo Distribution violates the Settlement
Agreement.[26]  In fact, the Holdings Trustee casts this case as an attempt to force a new deal after
the Trustee refused to amend the prior agreement by filing claims in this Court against not only
Georgia defendants Mr. Damani and Mr. Kassam, but also against additional defendants who were
not sued in Georgia and arguably fall outside of the agreement's terms. As set forth in greater
detail below, this case presents a classic example of forum shopping by Plaintiffs.

## ARGUMENT

### I.    Legal Standard for Failure to Sate a Claim.

A motion to dismiss is designed to test the sufficiency of the allegations in a complaint.
*See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The purpose of Rule 12(b)(6) "is to allow
the court to eliminate actions that are *fatally flawed in their legal premises and destined to fail*,
and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *In re Aspect
Software Parent, Inc.*, 578 B.R. 718 (Bankr. D. Del. 2017) (emphasis added). "To survive a motion
to dismiss, a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face.'" *Id*. The Court's review of a motion to dismiss is limited to the
allegations in the complaint, any attached exhibits, any documents incorporated by reference, other
documents that are referenced in the complaint or that form the basis of a claim, anything subject
to judicial notice, and matters of public record. *Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004),

---

damages under Georgia law, which are duplicative of Reorganized Lucky Bucks' Counts VI and VII its Second
Amended Complaint in the Georgia Lawsuit. Ex. H.  Reorganized Lucky Bucks is no longer pursuing its claim for
improper dividends against Mr. Kassam, which it now admits it has no basis to pursue.  *See* Status Update Regarding
Dividend Litigation, *In re Lucky Bucks, LLC, et al.*, No. 23-10758 (KBO) (Bankr. D. Del. May 30, 2025) [Dkt. 403,
¶10, n. 15].

[26]      *See* Holdings Trustee Response to Reorganized Debtors Status Update, *In re Lucky Bucks, LLC, et al.*, No.
23-10758 (KBO) (Bankr. D. Del. June 2, 2025) [Dkt. 404].

*abrogated on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010); *Mosiman v. Madison Cos., LLC*, 2019 WL 203126 (D. Del. Jan. 15, 2019). Rule 12(b)(6) applies in adversary proceedings. F. R. Bank. P. 7012(b).

## II.    This Court Should Not Allow Plaintiffs to Engage in Bad Faith Forum Shopping.

Reorganized Lucky Bucks has engaged in blatant forum shopping.  After litigating for a year-and-a-half, the Georgia Lawsuit was on its fourth judge, the claims had already been dismissed and refiled, reconsideration was denied, there was no meaningful discovery and several pending motions for protective order, and there was a whole new round of pending motions to dismiss – Reorganized Lucky Bucks had had no luck in Georgia. So it decided to recast and refile certain of its claims against Mr. Damani and Mr. Kassam in an adversary proceeding in this Court, adding more claims against even more defendants, hoping for a better outcome or at least some movement in its favor.  "While reasonable minds may differ about what constitutes forum shopping in any particular case, the term generally denotes some attempt to gain an unfair or unmerited advantage in the litigation process." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 222 (3d Cir. 2016); *see also FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 743 (E.D. Pa. 2005) ("decision to file an action in another judicial district" because of a perceived benefit, is considered either forum shopping or forum avoidance and is sometimes frowned upon for reasons of equity").  That is precisely what Reorganized Lucky Bucks did in this case, and its restated claims should be dismissed.

Mr. Damani and Mr. Kassam have been sued in both Georgia and this Court for some the same claims.  Plaintiffs' fraudulent transfer claim against Mr. Damani under Georgia law in Count 3, and for breach of fiduciary duty against Mr. Kassam under Georgia law in Count 6 are both repetitive of the claims Reorganized Lucky Bucks unilaterally removed from the Georgia Lawsuit.

Moreover, Counts 7 and 8, which seek attorney's fees and punitive damages under Georgia law, are duplicative of Reorganized Lucky Bucks' Counts VI and VII in its Second Amended Complaint in the Georgia Lawsuit. Reorganized Lucky Bucks cannot and should not be allowed to use this Court to game the system and get a do-over of claims that fell flat in Georgia.  Mr. Damani and Mr. Kassam cannot and should not be forced to relitigate those issues here, nor should they be forced to defend the same conduct in multiple cases at the same time.  The Georgia Lawsuit, the Holdings Trustee's lawsuit, and now this lawsuit are all ongoing and center on the same alleged fraudulent scheme.

Moreover, Reorganized Lucky Bucks is misusing the bankruptcy proceedings in this Court as both a shield and a sword.

***First, the shield.***  Mr. Damani and other defendants in the Georgia Lawsuit asked the Georgia court to stay the Georgia proceedings upon learning that the Holdings Trustee accused Lucky Bucks of engaging in a fraudulent scheme to hide the status of the Company during the Plan approval process.  Reorganized Lucky Bucks actively opposed the motions to stay, rejecting arguments about whether it was the proper party in interest to recover the OpCo Distribution.  But that is precisely where we are now, as the Holdings Trustee states that he is now "*competing*" with Reorganized Lucky Bucks "to obtain a recovery from the same defendants."[27]  Plaintiffs hid behind the bankruptcy to keep the Georgia claims going, only to later *sua sponte* remove some of those claims and reassert them here.  Reorganized Lucky Bucks also entered into a settlement agreement to resolve the adversary proceeding that allowed it to protect itself from any discovery in Georgia that might predate or otherwise precede discovery in the adversary proceeding.  Mr. Damani and

---

[27]    *See* Holdings Trustee Response to Reorganized Debtors Status Update [Dkt. 404, ¶28].

Mr. Kassam are defending themselves in the Georgia Lawsuit, the Holdings Adversary Proceeding, and this case.

**Now, the sword.**   Reorganized Lucky Bucks is jockeying for a better forum in this Court, choosing to remove and refile certain of the Georgia claims here.  Reorganized Lucky Bucks took it upon itself to remove its claims from the Georgia case and file a Second Amended Complaint there 3 days after it filed the Complaint at issue here.  It also used this Court to get discovery materials pursuant to Federal Rule of Bankruptcy Procedure 2004 that had been produced to the Holdings Trustee by multiple parties.[28]  According to the Holdings Trustee, this case is the culmination of a months'-long scheme by Reorganized Lucky Bucks "to justify breaching the settlement agreement" to which the Trustee agreed and this Court approved.[29]

Through it all, Mr. Damani and Mr. Kassam continue to be dragged through court in Georgia and here. Thankfully, Reorganized Lucky Bucks' conduct is not typical as it does not appear to have been addressed in this Circuit. In the similar, though not directly analogous situation, the "first-filed" rule requires that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (citations omitted). Although the rule "encourages sound judicial administration and promotes comity among federal courts of equal rank," courts need not adhere to "wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 971-72. Rather, "the letter and spirit" of the rule are "grounded on equitable principles." *Id.* at 977.  The blatant forum shopping evident in this case would warrant dismissal under the rule.

---

[28]     *See* Status Update Regarding Dividend Litigation [Dkt. 403, ¶9].

[29]     *See* Holdings Trustee Response to Reorganized Debtors Status Update [Dkt. 404, ¶20].

Reorganized Lucky Bucks' conduct in this case is more akin to an anticipatory lawsuit, where there's a race to the courthouse, which is subject to dismissal or transfer and is not entitled to the benefits of the first-filed rule. *FMC Corp.*, 379 F. Supp. at 744; *see also Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.,* 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (dismissing anticipatory lawsuit). Courts have rejected similar gamesmanship involving the withdrawal and subsequent refiling of claims. *Ewideh v. Homesite Ins. Co. of the Midwest*, No. 1:23-CV-812, 2023 WL 5170379, at *4 (M.D. Pa. July 17, 2023) (vacating voluntary dismissal in violation of F.R.C.P. 41 and denying motion for same). The Court should exercise its discretion and dismiss Plaintiffs' claims here as rank impermissible forum shopping.

### III.    The OpCo Plan Release Bars All Claims, and the Carveout Provision Does Not Apply.

The OpCo Plan included a broad release of claims, which plainly applies to the Damani Defendants.[30] The OpCo Plan release specifically includes "any and all Causes of Action . . . that such Person would have been legally entitled to assert based on or relating to . . . any Avoidance Actions held by any of the OpCo Debtor(s) or their Estates. . ." OpCo Plan [Dkt. 187], § VII(A)(2). Mr. Damani, LBVI, and LBV27 each are a "Released Party" under the OpCo Plan.

The OpCo Plan includes a provision that exempts "Claims and liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction." OpCo Plan § VIII(A)(2) (the "Carveout provision"). For the reasons set forth in the Management Defendants' and Trive Defendants' motions to dismiss

---

[30]     Collectively, Damani Defendants refers to Anil Damani, LBVI, and LBV27. Compl. ¶¶30-32. "Released Parties" is defined to include, among others, "the officers of each of the OpCo Debtors, the members of any board of managers of each OpCo Debtor, . . . [and] the Consultants." OpCo Plan [Dkt. 187], § I(A) at 15. In turn, "Consultants" is defined to include Mr. Damani. *Id*. at 5-6.

the Complaint, which the Damani Defendants fully adopt, all of Plaintiffs' claims should be dismissed under the OpCo Plan release and are not saved by the Carveout provision.

## IV.    The Actual Fraudulent Transfer Claims Fail.

In Count 1, Reorganized Lucky Bucks asserts a claim for avoidance and recovery of actual fraudulent against LBV27 and Damani under the Bankruptcy Code, 11 U.S.C. §§ 548(a)(1)(A) and 550.  Reorganized Lucky Bucks asserts the same claim under Delaware law in Count 2 and Georgia law in Count 3[31] pursuant to §544(b), which authorizes a debtor-in-possession to pursue any fraudulent-transfer claims that creditors could have previously asserted under state law.  All three claims fail.

To avoid a transfer under Bankruptcy Code Section 548(a)(1)(A), Reorganized Lucky Bucks must show the transfer was made "with actual intent to hinder, delay or defraud" creditors. *In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009).  When direct evidence of fraudulent intent is unavailable, courts may rely on circumstantial evidence to infer actual fraudulent intent. *Id.* at 544–45 (Bankr.D.Del.2009).   Such "badges of fraud" include: (i) the relationship between the debtor and the transferee; (ii) consideration for the conveyance; (iii) insolvency or indebtedness of the debtors; (iv) how much of the debtor's estate was transferred; (v) reservation of benefits; control or dominion by the debtor over the property transferred; and (iv) secrecy or concealment of the transaction.  *Id.* at 545 (citing *In re Hechinger Inv. Co., of Del.*, 327 B.R. 537, 551 (D. Del. 2005), *aff'd on other grounds*, 278 Fed. App'x 125 (3d Cir. 2008)).

---

[31]     *See* 6 DEL. C. § 1304(a)(1) ("[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor . . . ."); OCGA § 18-2-74(a)(1) ( "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor.").  The analysis of fraudulent transfer claims under both Delaware and Georgia law are substantially similar to Section 548 of the Bankruptcy Code. *In re Opus East, LLC*, 528 B.R. 30, 82 (Bankr. D. Del. 2015); *In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *3 (Bankr. N.D. Ga. Sept. 30, 2021).

"Because they are only evidence of the likelihood of fraud, badges of fraud are not given equal weight; and sometimes the circumstances indicate they should be given no weight at all." *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 131 (Bankr. E.D.N.Y. 2013). "They must be judged in the context of other evidence and in light of what reasonable implications can be drawn from it in a particular case." *Geron v. Craig (In re Direct Access Partners, LLC)*, 602 B.R. 495, 544 (Bankr. S.D.N.Y. 2019).

Plaintiffs allege that the Mr. Damani engaged in a fraudulent scheme beginning in at least 2019 to "loot" Lucky Bucks' assets, as set forth in the Georgia Lawsuit, by stealing COAM machines and diverting contracts to entities he "secretly controlled," Compl. ¶¶3, 53; working with Mr. Kassam on a scheme to artificially inflate the price of location contracts to enrich themselves at the expense of Lucky Bucks, *id.* ¶57; and frequently meeting with Kassam and appointing him to the Board in furtherance of said scheme, *id.* ¶¶7, 54, 115-16. Plaintiffs also allege Mr. Damani knew the OpCo Distribution was based on a false claim that the Company's assets exceed its liabilities, *id.* ¶7; Lucky Bucks, according to its balance sheet, was insolvent before the OpCo Distribution, *id.* ¶85; and the Trive Defendants and Management Defendants routinely shared information with Mr. Damani, i*d.* ¶¶72-73. The Georgia Lawsuit's first Complaint was dismissed; its Second Amended Complaint suffers from the same flaws and is subject to several pending motions to dismiss. Moreover, having meetings and sharing information on its face is not fraudulent, and tagging on conclusory allegations of fraud is not enough.

The Complaint purports to allege five "badges of fraud" – (i) a transfer to insiders, (ii) for no consideration, (iii) after incurring a substantial debt (the $535 million loan), (iv) while Lucky Bucks was insolvent, (v) which involved a substantial portion of Lucky Bucks' assets. Compl. ¶¶ 119, 121-122, 130, 132-133, 141, 143-144. Although "the badges of fraud provide a basic rubric,"

the court must "examine the totality of the circumstances to determine whether fraudulent intent exists." *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *5 (Bankr. D. Del. Feb. 8, 2016); *In re Ballantyne Brands, LLC*, 656 B.R. 117, 160 (Bankr. W.D.N.C. 2023) ("the badges are not necessarily determinative").  The badges of fraud alleged here fail to create a plausible inference of fraudulent intent.  The lenders expressly authorized the OpCo Distribution and knew that Lucky Bucks' liability on its balance sheet exceeded the book value of its assets.[32]  Plaintiffs conclude that Lucky Bucks was insolvent at the time of the OpCo Distribution (July 30, 2021) based on a June 30, 2021 balance-sheet purportedly showing a $45 million deficit between the Company's assets and liabilities.  *Id.* ¶¶7, 68, 84-85, 108, 111.  Plaintiffs plead no facts to show which values were supposedly reflected in that balance sheet, who saw the balance sheet, why the June balance sheet would necessarily reflect the financial picture for July when the OpCo Distribution was made, or that Lucky Bucks was unable to make payments right after.   In fact, Lucky Bucks continued to operate for nearly two years *after* the OpCo Distribution.

### A.    The Fraudulent Transfer Claims Lack the Requisite Specificity and Are Woefully Inadequate as to the Damani Defendants.

Reorganized Lucky Bucks' claims for intentional fraudulent transfer are subject to the heightened pleading standard of Rule 9(b). *See In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, at *12 (Bankr. D. Del. 2018). "A pleading is sufficient under Rule 9(b) if it states the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Mosiman*, 2019 WL 203126, at *3; *accord In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (Rule 9(b) requires plaintiffs to "support their

---

[32]    The Damani Defendants incorporate the explanation and argument regarding book value set forth in the Trive Defendnants' motion to dismiss.  *See* Ex. __ (Credit Agreement) § 4.01(n) (requiring that Macquarie and KeyBanc receive audited, unaudited, and pro forma balance sheets and income statements for various periods, including periods ended March 31, 2021).

allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' . . . the 'who, what, when, where and how' of the events at issue"). In addition, "boilerplate and conclusory allegations will not suffice," and plaintiffs have an obligation to "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Allegations that the collective Defendants engaged in fraudulent conduct do not comport with Rule 9(b). *See, e.g.*, Compl. ¶6.

The facts specific to Mr. Damani, let alone LBVI and LBV27, do not constitute or support the presence of any badge of fraud and are plainly insufficient to allege *actual fraudulent intent*. The crux of Plaintiffs' fraudulent transfer claims is that Mr. Damani, the Trive Defendants, and the Management Defendants spearheaded the OpCo Distribution through a pattern of fraud, but there are no facts to provide "the 'who, what, when, where and how'" to tie the Damani Defendants to the badges of fraud. For example, Plaintiffs allege only on information and belief that Mr. Damani and Kassam used "sham players to falsely increase the monthly revenue rate for the diverted locations." *Id.* ¶56.

The allegations fall far short of Rule 9(b)'s requisite specificity. The conclusory allegation that the lenders were misled about compliance with "the GLC order banning Damani's involvement," *id.* ¶¶ 74, 120, 131, 142, is not based on any alleged misrepresentation. The GLC's order prohibited Mr. Damani from serving as an "officer" of Lucky Bucks or "member of the HoldCo Board" or exercising "operational control" over the business, *id.* ¶¶ 50-51. Plaintiffs do not allege that Mr. Damani did any of those things. Rather, Plaintiffs allege only that Mr. Damani was kept in the loop regarding the Macquarie loan and certain acquisition opportunities, and that he nominated a HoldCo director (Kassam) pursuant to his rights as a shareholder. *Id.* ¶¶ 63, 66-

67, 72-73.  The Complaint lacks sufficient factual allegations connecting the Damani Defendants

to any of these badges of fraud, let alone to create a plausible inference of actual fraudulent intent.

### B.    The Lenders Cannot Recover Transfers They Approved.

The OpCo Distribution cannot be deemed "fraudulent" when the OpCo lenders—who

entirely comprise the ownership of Reorganized Lucky Bucks—consented to the transfers when

made.  Indeed, the lenders expressly authorized the use of the loan proceeds to fund the OpCo

Distribution.  The Credit Agreement provided that Lucky Bucks "shall" use the loan proceeds "to

finance the Closing Distribution" "to [its] equity holders of … $203,599,943.53."[33]  The purpose

of fraudulent-conveyance law is to prevent a debtor from wrongfully transferring its assets out of

the estate to defraud creditors who otherwise could look to those assets for repayment on their

claims.  *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006) (such laws "aim[] to

make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy

estate, even if they have been transferred away").  But "[c]reditors who authorized or sanctioned

the transaction, or, indeed, participated in it themselves, can hardly claim to have been defrauded

by [the transfer]," and fraudulent transfer law may not be invoked for their benefit.  *In re Lyondell

Chem. Co.*, 503 B.R. 348, 383-84 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re

Tribune Co. Fraudulent Conveyance Litigation,* 818 F.3d 98 (2d Cir. 2016).

Reorganized Lucky Bucks cannot disclaim the negative effects of a transaction they fully

evaluated and chose to undertake.  The First Lien Credit Agreement explicitly required that a

portion of the proceeds would be used to fund the OpCo Distribution.  This was known and agreed

to by the lenders from the outset, which precludes any inference of "fraud."  *See, e.g., In re Tribune*

---

[33]    *See* Credit Agreement, § 6.11; id. at Preliminary Statements, § 1.01 ("Closing Distribution").  A copy of the Credit Agreement is attached as an exhibit to the Trive Defendants' motion to dismiss.  The Damani Defendants cite to that copy to avoid unnecessary duplication in the record.

*Co. Fraudulent Conveyance Litig.*, MDL No. 11-md-2296, 2017 WL 82391, at *15 (S.D.N.Y. Jan. 6, 2017) (no inference of fraud where leveraged buyout transaction involved "sophisticated parties" and "received widespread publicity").

**V.    There's No Claim for Aiding and Abetting Breach of Fiduciary Duty under Delaware Law Without an Underlying Breach.**

Plaintiffs assert a claim for aiding and abetting breach of fiduciary duty under Delaware law against Mr. Damani in Count 5. The claim is premised on Sekhri, Boyden, and Kassam's alleged breach of fiduciary duty set forth in Count 4. Under Delaware law, an aiding-and-abetting claim requires "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Our Alchemy, LLC*, 2019 WL 4447519, at *9 (Bankr. D. Del. Sept. 16, 2019) (citation omitted).  "Knowing participation" means the defendant "both (1) participated in the breach; and (2) knew at the time that the conduct assisted constituted a breach of fiduciary duty." *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 119 (Bankr. D. Del. 2019). "To establish scienter, the plaintiff must demonstrate that the aider and abettor had 'actual or constructive knowledge that their conduct was legally improper." *Id.* (internal quotations omitted).

Plaintiff alleges Mr. Damani "knowingly participated in Kassam's breach of fiduciary duties by orchestrating a fraudulent scheme to loot Lucky Bucks's assets for Damani's and Kassam's personal gain." Compl. ¶167.  The Damani Defendants could not have aided and abetted in the absence of a fiduciary relationship and ensuing breach, which are conspicuously absent.  As set forth more fully in the Trive Defendants and Management Defendant's motions to dismiss, the managers of HoldCo owed no fiduciary duty to HoldCo as managers.  Even if such a duty was owed, the Complaint does not allege a breach of duty, let alone that the Damani Defendants knowingly participated in any breach.

**VI.    Attorneys' Fees and Punitive Damages**

Reorganized Lucky Bucks' claims for attorney's fees (Count 7) and punitive damages (Count 8) under Georgia law must fail without any valid substantive claim. "An award of attorney fees, costs, or punitive damages is derivative of plaintiff's substantive claims." *Stephen A. Wheat Tr. v. Sparks*, 325 Ga. App. 673, 682 (2014). The claims are wholly derivative of the substantive claims addressed above and, because those must be dismissed for failure to state a claim, so too must the ancillary claims for attorney's fees and punitive damages. *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 560–61 (2007).

**VII.    Declaratory Judgment**

Reorganized Lucky Bucks seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 against all Defendants in Count 9.  "A declaratory count must be 'distinct' from the affirmative counts in the complaint such that a decision on the affirmative counts would not resolve the declaratory count." *Id.* (quotation omitted). *DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799 (Del. Super. Ct. June 10, 2024) (rejecting a claim for declaratory judgment that was "wholly and completely duplicative" of affirmative claims). Declaratory relief is unavailable "where a claimant merely has repackaged in the language of a declaration an adequately pleaded affirmative count." *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *15 (Del. Super. Ct. Sept. 29, 2021).  Here, Reorganized Lucky Bucks did exactly what the law prohibits – repackaged its affirmative claims as a claim for declaratory judgment.  Count 9 should be dismissed in its entirety.

## **CONCLUSION**

For the foregoing reasons, Mr. Damani, LBVI, and LBV27 respectfully request that the

Court dismiss all claims against them with prejudice.

Dated:   September 5, 2025
         Wilmington, Delaware

BAYARD, P.A.

*/s/ Steven D. Adler*
Ericka F. Johnson (Del. Bar No. 5024)
Steven D. Adler (Del. Bar No. 6257)
600 N. King Street, Suite 400
Wilmington, DE 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
ejohnson@bayardlaw.com
sadler@bayardlaw.com

-and-

CHILIVIS GRUBMAN
Lauren A. Warner (GA 425769)
Scott R. Grubman (GA 317011)
Brittany M. Cambre (GA 350793)
1834 Independence Square
Atlanta, Georgia 30338
Telephone: (404) 233 4171
Facsimile: (404) 261 2842
lwarner@cglawfirm.com
sgrubman@cglawfirm.com
bcambre@cglawfirm.com

*Counsel for Defendants Anil Damani, Lucky*
*Bucks Ventures, Inc., and LBV27, LLC*