## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUCKY BUCKS, LLC, *et al.*<br><br>     Debtors. | Chapter 11<br><br>No. 23-10758 (KBO) |
| LB NEWHOLDCO, LLC and<br>LUCKY BUCKS, LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>TRIVE CAPITAL MANAGEMENT LLC,<br>*et al.*,<br><br>     Defendants. | Adversary Proceeding<br><br>No. 25-50965 (KBO) |

## REPLY MEMORANDUM IN SUPPORT OF
## TRIVE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**PACHULSKI STANG ZIEHL**
  **& JONES LLP**

Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400

**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363

Dated:  December 4, 2025

# TABLE OF CONTENTS

I.      THE CLAIMS AGAINST THE TRIVE DEFENDANTS WERE RELEASED BY THE PLAN ...............1

II.     THE FRAUDULENT-TRANSFER CLAIMS SHOULD BE DISMISSED............................................3

    A.      The Lenders' Express Authorization Of The OpCo Distribution Bars The
        Fraudulent-Transfer Claims....................................................................................3

    B.      The Complaint Fails To State A Claim Of Intentional Fraudulent Transfer ..........8

III.    THE AIDING-AND-ABETTING CLAIM SHOULD BE DISMISSED ...........................................13

    A.      The HoldCo LLC Agreement Eliminated The Managers' Fiduciary Duties.........13

    B.      The Complaint Fails To Allege A Breach Of Any Fiduciary Duty......................16

    C.      The Complaint Fails To Allege That The Trive Defendants "Knowingly
        Participated" In Any Breach .................................................................................17

IV.     THE CLAIMS FOR ATTORNEY'S FEES, PUNITIVE DAMAGES, AND A DECLARATORY
    JUDGMENT SHOULD BE DISMISSED.........................................................................................19

V.      THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ......................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*159 MP Corp. v. Redbridge Bedford, LLC*,
  128 N.E.3d 128 (N.Y. 2019) ......................................................................................2

*Aetna Life Ins. Co. of Hartford v. Haworth*,
  300 U.S. 227 (1937) ................................................................................................19

*ASARCO LLC v. Ams. Mining Corp.*,
  396 B.R. 278 (S.D. Tex. 2008) ..................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................18

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
  307 F. Supp. 2d 608 (D. Del. 2004) .........................................................................14

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018) .......................................................................4

*Eberhard v. Marcu*,
  530 F.3d 122 (2d Cir. 2008) ......................................................................................7

*Friedman v. Grant*,
  No. 24-00576-JDA (D.S.C. Sept. 23, 2025), Dkt. No. 37, *appeal docketed*,
  No. 25-2309 (4th Cir. Oct. 27, 2025) ................................................................4, 6, 7

*Gabelli & Co. v. Liggett Grp., Inc.*,
  479 A.2d 276 (Del. 1984) ........................................................................................16

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
  2014 WL 6703980 (Del. Ch. Nov. 26, 2014) ..........................................................18

*In re Adelphia Recovery Tr.*,
  634 F.3d 678 (2d Cir. 2011) ......................................................................................4

*In re Bayou Steel BD Holdings, L.L.C.*,
  642 B.R. 371 (Bankr. D. Del. 2022) ..................................................................15, 16

*In re Bos. Generating LLC*,
  617 B.R. 442 (Bankr. S.D.N.Y. 2020), *aff'd on other grounds sub nom.*
  *Holliday v. Credit Suisse Sec. (USA) LLC*, 2021 WL 4150523 (S.D.N.Y.
  Sept. 13, 2021), *aff'd*, 2024 WL 4234886 (2d Cir. Sept. 19, 2024), *cert.*
  *denied*, 145 S. Ct. 1176 (2025) .............................................................................4, 5

*In re Cadira Grp. Holdings, LLC Litig.*,
    2021 WL 2912479 (Del. Ch. July 12, 2021)......................................................15

*In re Columbia Pipeline Grp., Inc. Merger Litig.*,
    342 A.3d 324 (Del. 2025) ......................................................................17

*In re Cred Inc.*,
    650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ........................18

*In re Davis*,
    2011 WL 5429095 (W.D. Tenn. Oct. 5, 2011) ...................................................13

*In re Elrod Holdings Corp.*,
    421 B.R. 700 (Bankr. D. Del. 2010) ............................................................12

*In re Extended Stay, Inc.*,
    2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) .........................................4

*In re Fairfield Sentry Ltd.*,
    147 F.4th 136 (2d Cir. 2025) ..................................................................9

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ............................................................8

*In re GBG USA Inc.*,
    666 B.R. 115 (Bankr. S.D.N.Y. 2024) .........................................................13

*In re HH Liquidation, LLC*,
    590 B.R. 211 (Bankr. D. Del. 2018) ...........................................................16

*In re Honeywell Int'l Inc. Consol. S'holder Litig.*,
    2024 WL 492392 (D. Del. Feb. 8, 2024) ...............................................14, 16, 19

*In re Lyondell Chem. Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In
    re Trib. Co. Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016), *vacated
    and superseded on other grounds*, 946 F.3d 66 (2d Cir. 2019) .....................3, 4, 5, 6, 7

*In re Mallinckrodt plc*,
    2024 WL 1420975 (Bankr. D. Del. Apr. 2, 2024) .........................................14, 15

*In re Millennium Lab Holdings II, LLC*,
    2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ...........................................13

*In re Millennium Lab Holdings II, LLC*,
    2025 WL 794311 (Bankr. D. Del. Mar. 12, 2025)..............................................4

*In re Mindbody, Inc., S'holder Litig.*,
    332 A.3d 349 (Del. 2024) ........................................................................17

*In re NE 40 Partners, Ltd. P'ship*,
    440 B.R. 124 (Bankr. S.D. Tex. 2010) ...................................................8

*In re Ne. Gas Generation, LLC*,
    639 B.R. 914 (Bankr. D. Del. 2022) ......................................................2

*In re Old CarCo LLC*,
    435 B.R. 169 (Bankr. S.D.N.Y. 2010) ................................................10

*In re Opus E. LLC*,
    698 F. App'x 711 (3d Cir. 2017) .........................................................10

*In re Palm Beach Fin. Partners, L.P.*,
    488 B.R. 758 (Bankr. S.D. Fla. 2013) ..................................................8

*In re Physiotherapy Holdings, Inc.*,
    2016 WL 3611831 (Bankr. D. Del. June 20, 2016) ..........................4, 5

*In re Syntax-Brillian Corp.*,
    2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) ..............................12

*In re Trans World Airlines, Inc.*,
    134 F.3d 188 (3d Cir. 1998)................................................................10

*In re Trib. Co. Fraudulent Conv. Litig.*,
    10 F.4th 147 (2d Cir. 2021) .............................................................3, 12

*In re Tronox Inc.*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013) ..................................................4

*In re Winstar Commc'ns, Inc.*,
    348 B.R. 234 (Bankr. D. Del. 2005), *aff'd,* 2007 WL 1232185 (D. Del.
    Apr. 26, 2007), *aff'd in part,* 554 F.3d 382 (3d Cir. 2009)................10

*In re Zohar III, Corp.*,
    631 B.R. 133 (Bankr. D. Del. 2021) ......................................................9

*Litt v. Wycoff*,
    2003 WL 1794724 (Del. Ch. Mar. 28, 2003)....................................17

*Malhan v. Sec'y U.S. Dep't of State*,
    938 F.3d 453 (3d Cir. 2019)................................................................19

*New Enter. Assocs. 14, L.P. v. Rich*,
    295 A.3d 520 (Del. Ch. 2023)............................................................15

*Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
    2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ...................................................17

*Osios LLC v. Tiptree, Inc.*,
    2024 WL 2947854 (Del. Ch. June 12, 2024) ...................................................15

*R/S Assocs. v. N.Y. Job Dev. Auth.*,
    771 N.E.2d 240 (N.Y. 2002) ...........................................................................2

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014).............................................................................3

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2006) ..............................................................................16

*U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*,
    191 N.E.3d 355 (N.Y. 2022).............................................................................2

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
    479 B.R. 405 (N.D. Tex. 2012)................................................................5, 6, 7

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*,
    761 F.3d 409 (5th Cir. 2014) ........................................................................13

*Wagner v. BRP Grp., Inc.*,
    316 A.3d 826 (Del. Ch. 2024).........................................................................14

*Weisfelner v. Fund 1*,
    Adv. Proc. No. 10-04609 (Bankr. S.D.N.Y. Dec. 19, 2011), Dkt. No. 253 .......................6

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ..............................................................................14

### STATUTES

11 U.S.C. § 101.......................................................................................................9

11 U.S.C. § 544.....................................................................................................19

11 U.S.C. § 548....................................................................................................8, 9

11 U.S.C. § 550.....................................................................................................19

Del. Code Ann. tit. 6, § 1302 ....................................................................................9

Del. Code Ann. tit. 6, § 1304 ....................................................................................9

Del. Code Ann. tit. 6, § 18-1101 .................................................................14, 15, 16

v

Del. Code tit. 8, § 102 ..................................................................................................16

Ga. Code Ann. § 18-2-72 .............................................................................................9

Ga. Code Ann. § 18-2-74 .............................................................................................9

## RULES

Fed. R. Bankr. P. 2004 .......................................................................................8, 10, 19

Fed. R. Civ. P. 8 ..........................................................................................................18

Fed. R. Civ. P. 9 ......................................................................................................8, 18

Plaintiffs' opposition ("Opposition" or "Opp.") only underscores why their claims against the Trive Defendants fail. Plaintiffs ignore critical documents incorporated in their own Complaint, misconstrue or misstate the applicable case law, and engage in pure speculation. The Complaint should be dismissed with prejudice.[1]

## I. THE CLAIMS AGAINST THE TRIVE DEFENDANTS WERE RELEASED BY THE PLAN

1. As Plaintiffs acknowledge (Opp. 15), the Plan released the Trive Defendants from all "Claims and Causes of Action … relating to … any of the OpCo Debtors," while the carve-out from that release preserved only "*Claims* and liabilities *resulting therefrom*" for fraud or willful misconduct, with the term "Claim" defined to mean a "claim … *against an OpCo Debtor*." Plan art. I.A., VIII.A.2 (emphases added); *see* Mot. ¶¶ 19, 26. Plaintiffs respond by ignoring the actual language of the carve-out; they argue that it preserved not only "Claims," but also all "liabilities," for fraud and willful misconduct. Opp. 14-16. That argument fails because the only "liabilities" carved out were those "*resulting therefrom*"—i.e., liabilities resulting from "*Claims*" against the OpCo Debtors. As much as they try, Plaintiffs cannot make those critical words—"Claims and liabilities resulting therefrom"—disappear. Because Plaintiffs' claims against the Trive Defendants are not "Claims" "against an OpCo Debtor" or "resulting" "liabilities," the carveout from the release does not apply by its plain terms.

2. Perhaps recognizing as much, Plaintiffs argue that the Court should not enforce the Plan's plain language because that supposedly would produce an "absurd result" in which the carve-out does no work. Opp. 15, 17. But the carve-out does meaningful work. For example, it preserves any Claims for fraud or willful misconduct that either OpCo Debtor may have against

---

[1] Capitalized terms not defined in this Reply have the meanings set forth in the motion to dismiss. References to filings (i) in this adversary proceeding are cited as "D.I."; (ii) in the bankruptcy case, Case No. 23-10758 (KBO), as "Bankr. D.I."; and (iii) in unrelated dockets as "Dkt. No."

1

the other, since each OpCo Debtor is itself a "Released Party" that would otherwise be released. Plan art. I.A. (definition of "Released Party"), VIII.A.2.  And such preserved "Claims" could proceed if a non-releasing party (like Holdings) were to obtain a Final Order against a Released Party (like one of the Opco Debtors) for fraud or willful misconduct.

3.       In any event, the plain language controls.  The Plan "is unambiguous" and "must be enforced as written."  *In re Ne. Gas Generation, LLC*, 639 B.R. 914, 923 (Bankr. D. Del. 2022). That principle has particular force here, where sophisticated parties agreed to an "extensively negotiated" release (Opp. 11) as part of a broader deal between stakeholders (including the OpCo Debtors and the Trive Defendants) on the terms of the OpCo Debtors' restructuring.  Under that deal, Holdings preserved its claims—but as to the OpCo Debtors, the Trive Defendants agreed to enter into the Restructuring Support Agreement (and support the OpCo Debtors' reorganization) in exchange for complete releases from the OpCo Debtors.  Mot. ¶ 27.  Because this was "an arm's length transaction between sophisticated parties," it is not the role of the Court to "relieve [the parties] of the consequences of their bargain," *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 191 N.E.3d 355, 360 (N.Y. 2022) (internal quotation marks omitted), but rather to "enforce[]" the deal "according to the terms adopted by the parties," *159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 132 (N.Y. 2019).

4.       As a last resort, Plaintiffs argue that the Court should deny the Motion to permit Plaintiffs to introduce parol evidence of the parties' supposed intent.  Opp. 16-17, 19.  That argument as well flies in the face of settled law.  Parol evidence cannot contradict a contract— here, the Plan—that is clear.  *See R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242-43 (N.Y. 2002).  The claims brought in this Complaint by—not "against"—an Opco Debtor were

released under the Plan, and that alone requires the dismissal of the Complaint (though as discussed below the claims against the Trive Defendants fail for many other reasons as well).

## II.   THE FRAUDULENT-TRANSFER CLAIMS SHOULD BE DISMISSED

### A.   The Lenders' Express Authorization Of The OpCo Distribution Bars The Fraudulent-Transfer Claims

5.   In the Credit Agreement, the Lenders expressly authorized the OpCo Debtors to use the proceeds of their loan to fund the OpCo Distribution. As a matter of law, that consent estops Plaintiffs, who stand in the Lenders' shoes on these avoidance claims, from seeking to avoid and recover the very transfer that the Lenders knew and agreed would be made. *See* Mot. ¶¶ 29-37.[2]

6.   Plaintiffs concede that the Lenders knew that OpCo Debtors would use the loan proceeds to fund the OpCo Distribution, but they insist that consent or ratification requires full knowledge of all material facts and assert that the Lenders did not have such knowledge because the Lenders were purportedly misled about the OpCo Debtors' financial condition and creditworthiness. Opp. 20-28. As discussed below, Plaintiffs' allegations that the Lenders were misled are demonstrably implausible. But Plaintiffs' argument fails in any event. As most courts to consider the issue have recognized, that argument conflates the law of fraudulent *inducement* with the law of fraudulent *transfer*. Mot. ¶ 33.

7.   It is true, as Plaintiffs stress, that the law of consent or ratification requires knowledge of all material facts. But the relevant question is which facts are material *for purposes*

---

[2] Contrary to Plaintiffs' suggestion (Opp. 19-20), the defense of consent and ratification may be considered at this stage because it appears on the face of the Complaint and the Credit Agreement discussed and relied upon therein. *See In re Lyondell Chem. Co.*, 503 B.R. 348, 384-85 (Bankr. S.D.N.Y. 2014) (granting ratification defense on motion to dismiss based on loan documents relied upon in complaint) *abrogated on other grounds by In re Trib. Co. Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016), *vacated and superseded on other grounds*, 946 F.3d 66 (2d Cir. 2019); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (courts may consider on a motion to dismiss documents "integral to or explicitly relied upon in the complaint" (alterations and internal quotation marks omitted)).

*of the claim at hand*.  On a claim for *fraud* alleging that the Lenders were fraudulently *induced* to make a *loan* to the OpCo Debtors, the Lenders' alleged lack of knowledge of facts regarding the OpCo Debtors' creditworthiness might indeed preclude a consent or ratification defense.  But on a claim for fraudulent *transfer*, the only material fact that the Lenders needed to know (in order to have consented to the OpCo Debtors' *transfer* of the loan proceeds) was that the OpCo Debtors would *transfer* the loan proceeds, not retain them.  The Lenders undisputedly were not misled about that fact; they not only knew that the Opco Debtors would transfer the funds they received from the Lenders to the Opco Debtors' shareholders; they expressly agreed to that transfer.

8.      To be sure, there is a split in the case law on this issue (*see* Mot. ¶ 33), though with the recent *Friedman* decision discussed below, a majority of courts to consider the question have now agreed with the Trive Defendants.  Plaintiffs urge the Court to follow the two cases on the side of that split that supports their position—*Physiotherapy* and *Boston Generating*.[3]  But those decisions are unpersuasive.  Although the lenders in those cases had agreed to the transfers that were alleged to be avoidable, the courts rejected the defendants' ratification or consent defenses because the lenders were allegedly misled to *lend* to the borrowers without full knowledge of all

---

[3] The other decisions Plaintiffs cite do not address the issue at all.  *See In re Millennium Lab Holdings II, LLC*, 2025 WL 794311, *5-7 (Bankr. D. Del. Mar. 12, 2025) (no ratification defense raised or addressed); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 684-85, 693-94 (2d Cir. 2011) (denying ratification defense because estate representative's conduct at post-petition sale hearing did not show intent to ratify pre-petition transfers, which were made with no indication that debtor's creditors had known of or authorized the transfers); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 408, 465, 468-69 (S.D.N.Y. 2018) (denying ratification defense because there was no indication noteholders intended to ratify transfers that were made without their participation, most of which occurred before they even acquired the notes and some of which were not disclosed at all); *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 427-28 (S.D. Tex. 2008) (noting lack of argument "that ASARCO's creditors ratified the challenged transaction" by which debtor transferred stock without consent of unpaid environmental, tort, and other creditors); *In re Extended Stay, Inc.*, 2020 WL 10762310, at *72, *74-75 (Bankr. S.D.N.Y. Aug. 8, 2020) (denying ratification defense because lenders' mere agreement to cash-management agreement's "waterfall" provisions did not establish consent to future dividends that debtors later unlawfully chose to pay, and distinguishing *Lyondell* and *Crescent Resources* on that basis); *In re Tronox Inc.*, 503 B.R. 239, 252-53, 258-59, 271-72, 276, 284 (Bankr. S.D.N.Y. 2013) (denying ratification defense where, unlike here, there was no indication that bondholders knew of or consented to (i) debtor's eventual transfer to parent of proceeds from the bonds, bank loans, and debtor's IPO or (ii) affiliate's transfers of oil and gas assets years earlier, which "were not meaningfully disclosed").

material facts.  *See In re Physiotherapy Holdings, Inc.*, 2016 WL 3611831, at \*12-13 (Bankr. D. Del. June 20, 2016) ("With respect to a *bond issuance*, the borrower's financial health may be the most material fact" "to a reasonable investor's *decision to lend money to a company*"; "the Senior Noteholders may have been *misled into lending money*" (emphases added)); *In re Bos. Generating LLC*, 617 B.R. 442, 494-95 (Bankr. S.D.N.Y. 2020) ("With respect to *the loans* … [the borrower's] financial health is likely the most material fact"; "the Lenders … may have made the decision to *loan money* based on material misstatements" (emphases added)), *aff'd on other grounds sub nom. Holliday v. Credit Suisse Sec. (USA) LLC*, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021), *and aff'd sub nom. In re Bos. Generating, LLC*, 2024 WL 4234886 (2d Cir. Sept. 19, 2024), *cert. denied*, 145 S. Ct. 1176 (2025).

9.      As the better-reasoned cases on the other side of the split—*Verizon* and *Lyondell*—explain, that reasoning improperly applies the law of fraudulent *inducement* to an entirely different claim, one of fraudulent *transfer*.  Plaintiffs' characterization of *Verizon* and *Lyondell* as purportedly involving no "allegations of deception about financial condition" (Opp. 25-28 & n.57) misconstrues both the facts and legal reasoning of those cases.  In *Verizon*, the plaintiff made substantially the same argument advanced here: that "even if the banks and bondholders did know about the transfers, they were still 'duped' or 'tricked' about the substance of [the borrower] Idearc and the spin-off," and therefore "they did not actually ratify the transfer from Idearc to Verizon because they lacked 'full knowledge' of the nature of the spin-off."  *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 479 B.R. 405, 411 (N.D. Tex. 2012).  The court rejected that argument as legally "irrelevant," explaining that "[t]he plaintiff's claims are for fraudulent transfers, not for fraud" and that, "[b]ecause [the] lenders … had full knowledge of the transfers from Idearc to Verizon, they could not have brought fraudulent transfer claims."  *Id.* ("Fraudulent transfers are

not voidable where the benefit would run to a creditor that ratified the transfer"; "a creditor cannot avoid a transfer after he has voluntarily assented to it." *Id.* (alterations and internal quotation marks omitted)).

10.     *Lyondell* similarly dismissed fraudulent-transfer claims brought for the benefit of lenders that knew the debtor would use the loan proceeds to pay its shareholders.  *See* 503 B.R. at 384-85.  The court so held even though the plaintiff alleged that the borrower's earnings had been "inflated," causing the lenders to make their loans.  *See id.* at 389 & n.201, 390-92 (citing allegations that "the earnings projections upon which the Merger financial case was being based were "unsupportable," "inflated, unreasonable, and unachievable").[4] As the court explained, "[w]hile more nuanced knowledge might be necessary to establish ratification *in other contexts*"— i.e., if the claim were for fraudulent inducement—it was "more than sufficient" in the context of a fraudulent-transfer claim "for the [] lenders to have known … that they were lending for the purposes of an LBO, and that the proceeds of their loans were going to stockholders." *Id.* at 385 (emphasis added).

11.     Since the Trive Defendants filed their motion to dismiss, another court has adopted the reasoning of *Verizon* and *Lyondell* to affirm the dismissal of fraudulent-transfer claims where, as here, an estate representative standing in the shoes of lenders sought to avoid the payment of dividends funded by the lenders and expressly authorized in the loan agreements.  *See* Opinion and Order, *Friedman v. Grant*, No. 24-00576-JDA (D.S.C. Sept. 23, 2025), Dkt. No. 37, *appeal docketed*, No. 25-2309 (4th Cir. Oct. 27, 2025).[5]  In so holding, the district court found no need to inquire into whether the lenders had full knowledge of the debtors' financial condition when they

---

[4] *See also* Second Am. Compl. ¶¶ 110, 151-152, *Weisfelner v. Fund 1*, Adv. Proc. No. 10-04609 (Bankr. S.D.N.Y. Dec. 19, 2011), Dkt. No. 253 (alleging borrower's projections were "inflated," "concocted," and "pulled from a hat").
[5] A copy of the *Friedman* opinion is attached hereto as Exhibit A.

6

agreed to make the loan.  Rather, finding *Verizon* "instructive" and citing *Lyondell* as well, the court explained that the only knowledge that mattered was that the lenders "knew that their loans would be used … to fund the Dividends." *Id.* at 4, 6, 20-23 & n.10.  Because the lenders "consented to that use of the proceeds" and "their agreement required that the funds be used for that purpose," they were "estopped from voiding the [dividend] Transfers" by reason of "their ratification of … and participation in them." *Id.* at 20, 22-23.

12.        *Verizon*, *Lyondell* and now *Friedman* got it right.  Common-law-fraud (or fraudulent-inducement) claims and fraudulent-transfer claims are distinct causes of action.  The legal wrong that fraudulent-transfer law addresses is a debtor's transfer of assets it owns that creditors expected the debtor to retain to repay the creditors' claims, not the debtor's receipt of a loan from a third party.  *See Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (fraudulent-transfer law is a creditor remedy "whose object … is to enable a creditor to obtain his due despite efforts on the part of a debtor to elude payment" (internal quotation marks omitted)).  A fraudulent-transfer claim simply cannot lie where, as here, the creditors authorized the debtor's transfer and not only knew, but consented, that those assets would be unavailable to repay them.

13.        Plaintiffs respond that the alleged fraud in connection with the loan cannot be separated from the transfer in this case because the Lenders made their loans to fund the transfer.  Opp. 26.  But that was also the case in both *Verizon* and *Lyondell*.  There, as here, the lenders made loans for the express purpose of funding the challenged transfers, yet despite allegations that the borrower's financial health had been misrepresented, the courts held that the lenders' consent to the transfers precluded them from bringing fraudulent-transfer claims.  *See Verizon*, 479 B.R. at 410-11; *Lyondell*, 503 B.R. at 384-85, 389 & n.201, 389-92.  Here, too, the alleged wrong is not that Plaintiffs transferred the loan proceeds; the loan's express purpose was to finance the OpCo

Distribution, and the Lenders accordingly knew full well that they would not be able to look to those proceeds for repayment. Rather, if the Lenders have been wronged at all, it is that they were supposedly induced by allegedly fraudulent misrepresentations about the financial condition of the OpCo Debtors to provide the financing in the first place.

14.    The remedy for that alleged wrong is a claim for fraudulent inducement, not a claim for fraudulent transfer. Tellingly, the Lenders never brought such a claim—perhaps because, to establish liability, the Lenders would have to prove each element of such a claim, including material misrepresentation, scienter, and justifiable reliance. Plaintiffs, suing for the Lenders' benefit, cannot circumvent those demanding requirements by pursuing a fraudulent-transfer claim to claw back funds that the Lenders *agreed* the OpCo Debtors would transfer to their shareholders and *knew* would thus be unavailable to satisfy their claims against the OpCo Debtors.

**B.    The Complaint Fails To State A Claim Of Intentional Fraudulent Transfer**

15.    The fraudulent-transfer claims also fail because the Complaint does not remotely plead a plausible claim for intentional fraudulent transfer.[6] As Plaintiffs acknowledge, the Complaint must allege facts showing that the OpCo Debtors made the OpCo Distribution with the "*actual intent*" to hinder, delay, or defraud their creditors. *See* Mot. ¶ 38 (quoting 11 U.S.C. § 548(a)(1)(A) and state-law counterparts); Opp. 29 & n.58 (conceding same and that "[t]he debtor's intent is the relevant inquiry"). While Plaintiffs argue that they may plead either direct

---

[6] Contrary to Plaintiffs' argument, Plaintiffs are not entitled to a "relaxed" pleading standard, as is sometimes afforded litigation trustees. Opp. 12. To start, Plaintiffs are not trustees; they are the successors to the Debtors. But even if they were the equivalent of trustees, the rationale behind sometimes applying "relaxed" standards to claims brought by a litigation trustee would have no application here. That rational is that a trustee may "lack … knowledge concerning acts of fraud previously committed against the debtor." Opp. 12 (quoting *In re Fedders N. Am., Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009)). Here, Plaintiffs have already received approximately 21,000 documents from the Trive Defendants. *See* Mot. ¶ 21; *see also In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 777 (Bankr. S.D. Fla. 2013) (trustee not entitled to relaxation of Rule 9 pleading standard in part because of the "amount of discovery taken in the main bankruptcy case and the various adversary proceedings" by the trustee); *In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 128-29 (Bankr. S.D. Tex. 2010) (similar; trustee had ability to pursue Rule 2004 discovery, which "allows him to gather enough information so that the 'relaxed standard' promulgated by the Delaware bankruptcy courts is not necessary").

or circumstantial evidence of intent, they do not dispute that they must show that the OpCo Debtors made the OpCo Distribution with *actual* intent to thwart creditors, i.e., with a conscious "desire[]" to hinder, delay, or defraud creditors or "know[ledge]" that the transfer was "substantially certain" to result in such harm." Mot. ¶ 39 (internal quotation marks omitted) (quoting *In re Fairfield Sentry Ltd.*, 147 F.4th 136, 162-63 (2d Cir. 2025)). The Complaint does not come close to meeting this "demanding" standard. *Id.*[7]

16.    Plaintiffs' rhetoric aside, the only concrete fact the Complaint can muster to allege that the OpCo Debtors (or the Trive Defendants) supposedly knew that the OpCo Debtors were insolvent and made the OpCo Distribution with "actual intent" to hinder, delay or defraud creditors is that the HoldCo Board (and the Trive Defendants) knew that Lucky Bucks' June 30, 2021 balance sheet showed that the company was in the red on a *book-value* basis. Plaintiffs' opposition trumpets the June 30, 2021 balance sheet as proof that the HoldCo Board "misled" the Lenders and made "fundamental misrepresentations" in the Lucky Bucks Consent that Lucky Bucks was solvent. Opp. 22-24, 30-36.

17.    But it is hornbook law that a company's solvency is measured by its *market* value, not its accounting book value. Mot. ¶¶ 41-42. The Bankruptcy Code and state fraudulent-transfer law measure solvency by comparing a debtor's liabilities to its assets "at a fair valuation"[8]—which, for a going-concern like Lucky Bucks, involves "valuing the debtor's assets … by looking at [their]

---

[7] Plaintiffs are incorrect in contending that they need only clear the "low burden" of alleging the date, amount, and parties to a transfer to survive a motion to dismiss. Opp. 29. The authority they cite, *In re Zohar III, Corp.*, 631 B.R. 133 (Bankr. D. Del. 2021), was describing what is required to adequately specify the particular transaction being challenged, not the requirements to state a claim for intentional fraudulent transfer. *Id.* at 170.

[8] 11 U.S.C. §§ 101(32)(A), 548; Del. Code Ann. tit. 6, §§ 1302(a), 1304(b)(9); Ga. Code Ann. §§ 18-2-72(a), 18-2-74(b)(9).

'market value.'" *In re Opus E. LLC*, 698 F. App'x 711, 715 (3d Cir. 2017) (quoting *In re Trans World Airlines, Inc.*, 134 F.3d 188, 193-94 (3d Cir. 1998)); *see* Mot. ¶ 41.[9]

18.     The Complaint fails to allege any facts establishing that Lucky Bucks was insolvent on a *market*-value basis, or that anyone believed it was.[10]   To the contrary, as Plaintiffs all but admit, *Macquarie received a substantially similar balance sheet as part of its diligence that likewise showed that Lucky Bucks' liabilities exceeded the book value of its assets*. *See* Mot. ¶¶ 9, 42; Opp. 23, 35-36.[11]   Yet the highly sophisticated Lenders, led by Macquarie, which engaged in months of negotiations and conducted substantial diligence on Lucky Bucks, Compl. ¶¶ 70-76, elected to lend half a billion dollars to Lucky Bucks with the full knowledge and express agreement that Lucky Bucks would immediately use substantially all of the proceeds to pay off its prior credit facility and fund a $203 million dividend to its shareholders.   The Lenders' own actions to invest some $500 million in debt financing to Lucky Bucks, despite having the same knowledge that the OpCo Debtors and Trive Defendants had about Lucky Bucks' book value, precludes any inference that the OpCo Debtors (or Trive Defendants) "knew" that the OpCo Debtors were insolvent and "actually intended" to hinder, delay, or defraud creditors.

19.     The few other allegations that Plaintiffs cite are even more meager.   Plaintiffs point to the Complaint's allegations that the Lenders were misled regarding "whether Damani was still

---

[9] Plaintiffs are wrong in suggesting that "liquidation" value, not "going concern" value, applies here.  Opp. 34 & n.76.  "[L]iquidation basis" valuation "is only appropriate where bankruptcy is 'clearly imminent' and the 'business is on its deathbed,'" "wholly inoperative, defunct[,] or dead on its feet."  *Opus*, 698 F. App'x at 715; *accord In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 274-75 (Bankr. D. Del. 2005), *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007), *aff'd in part*, 554 F.3d 382 (3d Cir. 2009).  Lucky Bucks is not defunct; it has operated continuously as a going concern since making the OpCo Distribution four years ago.

[10] The Opposition (at 34) claims that the Complaint "nowhere … alleged that the June 30, 2021 balance sheet … utilized book values or that the value of the assets and liabilities in the June 30, 2021 balance sheet differed from fair market values."  Not so.  The balance sheet, which is incorporated in the Complaint and can be considered on this Motion, *see* Mot. ¶ 9 n.2, on its face is clear that all it shows is book value, not  market value.  *See* Mot. ¶¶ 41-42.

[11] Contrary to Plaintiffs' contention (Opp. 35-36), the balance sheet that Macquarie received may be considered on this motion because it was produced to Plaintiffs in Rule 2004 discovery and therefore is "part of the record," even at the pleading stage, "as a result of the Rule 2004 discovery."  *In re Old CarCo LLC*, 435 B.R. 169, 183-86 (Bankr. S.D.N.Y. 2010); *see* Mot. ¶ 9 & n.2.

involved in the Company's operations in contravention of the GLC Executive Order." Opp. 24, 31, 36 (citing Compl. ¶¶ 54, 63, 66-67, 74). But the Complaint itself admits that the GLC order only prohibited Mr. Damani from serving as an officer or board member or exercising "operational control" over the business, Compl. ¶¶ 50-51—not that it precluded the OpCo Debtors from ever consulting with him. That is fatal to the Plaintiffs' argument. The Complaint does not allege that Damani remained in management or control of the company. Rather, it alleges only that Mr. Damani was "looped in" regarding certain M&A opportunities that Mr. Boyden or Mr. Thadani negotiated, and that Mr. Damani exercised his right as a shareholder to nominate Mr. Kassam as a HoldCo director. *Id.* ¶¶ 63, 66-67.

20. Similarly, that Defendants allegedly failed to fulfill one Macquarie diligence request, for a twelve-month "revenue build" (Opp. 24, 31-32, 36, citing Compl. ¶ 75), does not plausibly establish that Macquarie was misled when it chose to enter into the loan anyway, evidently satisfied with the diligence it did receive. As for the allegation that certain management defendants (not Trive Defendants) knew of an overpayment for certain locations, Opp. 24-25 (citing Compl. ¶ 59), the Complaint fails to allege that the supposed overpayment had any material financial impact on the OpCo Debtors or was concealed from the Lenders. Compl. ¶¶ 59, 75. And the Complaint's allegation regarding the Holdings Distributions is a complete red herring. Opp. 25, 36 (citing Compl. ¶¶ 90-96). The OpCo Debtors did not transfer anything, or incur any debt, in connection with those distributions by a separate legal entity, Holdings. *See* Mot. ¶ 43.

21. Finally, the Complaint fails to plead that the OpCo Debtors "actually intended" to hinder, delay, or defraud creditors by alleging that Messrs. Damani and Kassam secretly engaged in the "B-Side Scheme" to divert and re-sell location contracts to Lucky Bucks at inflated prices, allegedly knowing that the OpCo Debtors' financial statements were inflated as a result. Mot.

¶ 44.  Nowhere does the Complaint allege that the Trive Defendants or any of the other Defendants beside Messrs. Kassam and Damani had any involvement in or knowledge of the covert B-Side Scheme.  *See* Compl. ¶¶ 53-61, 85, 89, 108, 121, 132, 143.  To the contrary, the Complaint effectively admits that a majority of the HoldCo Board—Messrs. Sekhri and Boyden—were *not* aware of the B-Side Scheme.  Compl. ¶¶ 53-59, 78, 84-85, 89, 108, 121; *see* Mot. ¶ 44.  And Plaintiffs likewise concede that "the Trive Defendants … may *not* have known about … the B-Side Scheme."  Opp. 23 (emphasis added); Mot. ¶¶ 2, 7, 16-17, 44.  Thus, any alleged fraudulent intent of Mr. Kassam (or Mr. Damani) cannot be imputed to the OpCo Debtors (or the Trive Defendants).  That is so because the OpCo Debtors' "actual intent" to hinder, delay, or defraud creditors can be established only through the intent of a majority of the members of the HoldCo Board, the only corporate actor having the authority to approve the OpCo Distribution and hence to control the transfer.  *See* Mot. ¶¶ 38-40, 44 & n.20 (citing *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 159-60 (2d Cir. 2021); *In re Elrod Holdings Corp.*, 421 B.R. 700, 709-12 (Bankr. D. Del. 2010)).  The Complaint includes no facts plausibly suggesting that a majority of the HoldCo board members—Messrs. Sekhri and Boyden—had any fraudulent intent when they approved the OpCo Distribution.

22.    That leaves Plaintiffs with only their argument that they have pleaded four "badges of fraud":  (i) transfer to insiders, (ii) for no consideration, (iii) while insolvent, (iv) of a substantial portion of Lucky Bucks' assets.  Opp. 33-37.  But as Plaintiffs acknowledge, the badges of fraud are merely circumstantial evidence, and the court must "examine the totality of the circumstances to determine whether fraudulent intent exists."  *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *5 (Bankr. D. Del. Feb. 8, 2016).  Under the circumstances alleged here, the badges of fraud raise no plausible inference of fraudulent intent.

23. Two of the badges of fraud—transfers to insiders, for no consideration—are present for every dividend and hence entitled to little weight. Mot. ¶ 46 (citing *Trib.*, 10 F.4th at 162; *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 435 (5th Cir. 2014)). Plaintiffs respond that dividends can create an inference of fraudulent intent when combined with other badges of fraud. Opp. 37. But Plaintiffs' two other purported badges of fraud—insolvency and transfer of a substantial portion of Lucky Bucks' assets—are, as discussed above, premised entirely on the *book value* of Lucky Bucks' assets in the June 30, 2021 balance sheet, which does not support any inference of insolvency, let alone of fraudulent intent. *See supra* ¶¶ 17-18. The fraudulent-transfer claims should be dismissed.[12]

## III. THE AIDING-AND-ABETTING CLAIM SHOULD BE DISMISSED

### A. The HoldCo LLC Agreement Eliminated The Managers' Fiduciary Duties

24. The Opposition studiously ignores both the plain language of Section 5.01(e) of the HoldCo LLC Agreement—which eliminates the Managers' fiduciary duties—and the extensive case law cited in the Motion (¶ 51 & n.22). Instead, Plaintiffs make the perplexing claim that Section 5.01(e) merely "modifie[s] some fiduciary duties owed by HoldCo Managers." Opp. 38-39. That statement blinks reality. On its face, Section 5.01 does not "modify" the Managers' fiduciary duties; it expressly eliminates them, in their entirety. Firsenbaum Decl., Ex. B at Trive_00074765 (§ 5.01(e)) (stating that "[n]one of the Managers" shall "have any duties (fiduciary or otherwise) or liabilities to" HoldCo).

---

[12] Plaintiffs' cases are distinguishable. *See In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *2-4 & n.26 (Bankr. D. Del. Feb. 28, 2019) (intent to defraud adequately pleaded where debtor made large transfers to shareholders and management when its "entire business model" was based on illegal practices that were being challenged in government investigations, which were not disclosed to rating agency and investors); *In re GBG USA Inc.*, 666 B.R. 115, 142 (Bankr. S.D.N.Y. 2024) ("the transfers were initially concealed from the [relevant] lenders and were concealed from other creditors" and the debtor "had been threatened with lawsuits prior to the transfers"); *In re Davis*, 2011 WL 5429095, at *1, *21-22 (W.D. Tenn. Oct. 5, 2011) (debtor pleaded guilty to the fact that the business was a Ponzi scheme, thus giving rise to a "Ponzi scheme presumption" of intent to defraud).

25.    Unable to escape this plain language, the Opposition engages in misdirection.  To start, the Opposition fundamentally misstates Delaware's carveout for claims arising out of "the implied contractual covenant of good faith and fair dealing."  *See* Del. Code Ann. tit. 6, § 18-1101(c).  That implied covenant "is a creature of contract, distinct from … fiduciary duties." *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008).  Because the "Complaint does not allege any contractual claims, let alone a 'bad faith' breach of the implied contractual covenant of good faith and fair dealing," *id.*, Section 1101(c)'s carveout is irrelevant.  Plaintiffs' own cited authority confirms as much.  *See Wagner v. BRP Grp., Inc.*, 316 A.3d 826, 847-48 nn.41, 43 (Del. Ch. 2024) (explaining that implied-covenant carveout in Section 1101(c) "cannot fulfill [the] mission" of saving a fiduciary-duty claim "because it is not a fiduciary substitute.").

26.    Plaintiffs' reliance on Sections 9.02 and 9.04 of the HoldCo LLC Agreement is equally misplaced.  *See* Opp 38-41.  As explained in the Motion, Section 9.02—a general exculpatory clause—is irrelevant to Plaintiffs' claim.  *See* Mot. ¶ 53.  The Opposition does not respond to this argument, thereby conceding the point.  *See In re Honeywell Int'l Inc. Consol. S'holder Litig.*, 2024 WL 492392, at *3 n.1 (D. Del. Feb. 8, 2024) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned by the non-movant.").  And in any event, Plaintiffs' reliance on Section 9.02 ignores basic contract-law tenets.  *See Chase Manhattan Bank v. Iridium Afr. Corp.*, 307 F. Supp. 2d 608, 613 (D. Del. 2004) (applying contract-law principles to interpret provision of LLC agreement).  "It is a fundamental axiom of contract interpretation that specific provisions control general provisions." *In re Mallinckrodt plc*, 2024 WL 1420975, at *2 (Bankr. D. Del. Apr. 2, 2024) (internal quotation marks omitted).  Accordingly, Section 5.01(e), which specifically addresses "Managers" and their fiduciary duties, controls here over Section 9.02, a general

14

provision that covers all "Covered Persons" and a broad range of conduct.  *See* Mot. ¶ 53; *Mallinckrodt*, 2024 WL 1420975, at *2 (provision governing specific claim governed provision applicable to "Claims generally").  Finally, Section 9.04 is likewise irrelevant:  It addresses the effect of a settlement on findings that an officer engaged in fraud or other misconduct—not the existence of any fiduciary duties, which Section 5.01(e) expressly eliminates.

27.    The Opposition's case law fares no better.  Several cases address the implied covenant of good faith and fair dealing—a doctrine of contract law that, as explained, is irrelevant to Plaintiffs' claim for aiding and abetting a breach of fiduciary duty.  *See, e.g.*, *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 580 n.235 (Del. Ch. 2023).  And other cases addressed LLC agreements with materially different language.  In *Cadira*, for example, the LLC agreement stated its intent "to restrict the liability and fiduciary duties of the Members and the Managers to the maximum extent permitted by applicable law"—but the *next* sentence "green-li[t] claims against the Manager arising from the 'Manager's bad faith, gross negligence, willful misconduct or actual fraud,'" thus rendering the agreement's intent to eliminate fiduciary duties ambiguous.  *In re Cadira Grp. Holdings, LLC Litig.*, 2021 WL 2912479, at *12 (Del. Ch. July 12, 2021).  Section 5.01(e) contains no such language.  *See* Ex. B § 5.01(e).  Rather, Section 5.01(e) mirrors the provision in the LLC agreement found to eliminate fiduciary duties in *Osios LLC v. Tiptree, Inc.*, 2024 WL 2947854 (Del. Ch. June 12, 2024), which distinguished *Cadira* for this precise reason.[13] Similarly, in *Bayou Steel*, the court held that language nearly identical to Section 5.01(e), unambiguously eliminated fiduciary duties.  *See In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 400 (Bankr. D. Del. 2022).  To be sure, the court also held that a general exculpatory clause

---

[13] The LLC agreement at issue in *Osios* "expressly provide[d] Tiptree 'shall not owe any fiduciary duties' to Osios, both '[t]o the fullest extent permitted by law, including Section 18-1101(c) of the [LLC] Act,' and 'notwithstanding any other provision of [the LLC] Agreement.'"  *Id.* at *8.

(akin to Section 9.02) contained in a separate LLC agreement did not eliminate fiduciary duties. *See id.* at 402-05. But that holding is irrelevant to interpreting Section 5.01(e) in this case because that LLC agreement in *Bayou* did not include any provision remotely like Section 5.01(e).

28.    Finally, in *In re HH Liquidation, LLC*, 590 B.R. 211 (Bankr. D. Del. 2018), the court relied on *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006), an inapposite case addressing exculpatory provisions governed by the Delaware General Corporation Law ("DGCL")—*not the Delaware LLC Act. See Stone*, 911 A.2d at 367 n.13. Unlike the DGCL, which prohibits exculpation for breaches of the duty of loyalty or "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law," Del. Code tit. 8, § 102(7)(i)-(ii), the Delaware LLC Act expressly permits the "eliminat[ion]" of all a manager's fiduciary duties, including the duty of loyalty, *see* Del. Code tit. 6, § 18-1101(c). And the latter, of course, is the statute that applies here.

### B.    The Complaint Fails To Allege A Breach Of Any Fiduciary Duty

29.    Plaintiffs' aiding-and-abetting claim fails for another reason: It fails to allege a breach of the Managers' duties. The Opposition ignores Delaware authority holding that "the declaration and payment of a dividend rests in the discretion of the corporation's board of directors in the exercise of its business judgment." Mot. ¶ 55 (quoting *Gabelli & Co. v. Liggett Grp., Inc.*, 479 A.2d 276, 280 (Del. 1984)). It also ignores the Motion's argument that approving a distribution for "the purpose of enriching" HoldCo's equity holders does not constitute a breach. *Id.* ¶ 56. And it ignores altogether the points made in the Motion showing why Trive's appointment of Mr. Sekhri and Mr. Boyden as HoldCo managers is not sufficient to establish any breach. *Id.* ¶¶ 57-58. By failing to address these dispositive arguments, Plaintiffs waive the issue. *See Honeywell*, 2024 WL 492392, at *3 n.1.

16

30.     Instead, the Opposition offers only conclusory allegations that the Trive Defendants and the Managers "had a coordinated and pre-planned scheme" and that "Trive's control of the Company and position as the primary beneficiary of the misconduct" renders the Trive Defendants culpable.  Opp. 45.  This vague and speculative narrative is supported not only by no alleged facts, but by no legal authority as well.  And Plaintiffs fail to explain how the Managers' authorization of the Distributions *itself* could have breached any duties.  *See Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *10 (Del. Ch. Aug. 24, 2004) (requiring proof that manager "was conflicted in his loyalties *with respect to the challenged board actions*" (emphasis added) (quoting *Litt v. Wycoff*, 2003 WL 1794724, at *4 (Del. Ch. Mar. 28, 2003))).

### C.     The Complaint Fails To Allege That The Trive Defendants "Knowingly Participated" In Any Breach

31.     The aiding-and-abetting claim fails for yet a third reason:  Plaintiffs fail to allege that the Trive Defendants knowingly participated in any supposed breach.  The Opposition ignores the legal standard for scienter in Delaware, which requires Plaintiffs to allege that the Trive Defendants *both* "kn[e]w that the [Managers'] conduct constitute[d] a breach" *and* "had actual knowledge that their [own] conduct was legally improper."  *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 390-91 (Del. 2024) (internal quotation marks omitted); *accord In re Columbia Pipeline Grp., Inc. Merger Litig.*, 342 A.3d 324, 371-72 (Del. 2025).  The Complaint alleges neither.  It does not allege any facts showing that the Trive Defendants knew the Managers' approval of the Distributions breached any duties, (nor could it, since no such duties existed, *see supra* § III.A), nor any facts showing that the Trive Defendants knew that their own conduct was supposedly unlawful.  Mot. ¶ 60.

32.    The Opposition protests that knowledge may be alleged "generally" (Opp. 47), but that is another red herring.  Although Federal Rule of Civil Procedure 9(b) excludes "knowledge" and "other conditions of … mind" from its particularity requirement, Fed. R. Civ. P. 9(b), Plaintiffs cannot satisfy even the more lenient Rule 8 pleading standard by offering only conclusory allegations that the Trive Defendants "knew" of alleged misconduct, *see Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).

33.    Allegations that Mr. Thadani spoke regularly with Mr. Sekhri, Mr. Bouskill, and Mr. Ijaz and "was involved in all high-level strategic decisions," Opp. 48 (citing Compl. ¶¶ 64-65), do not even establish what topics were discussed during those conversations—much less establish that Mr. Thadani knew that the Managers were breaching supposed fiduciary duties when approving the OpCo Distribution, or knew that his own conduct was supposedly improper.  *See In re Cred Inc.*, 650 B.R. 803, 823-24 (Bankr. D. Del. 2023) (finding generic allegations that defendants were "kept … abreast" of and "made … aware of" company's "financial situation" insufficient to establish that they "knew of a breach of fiduciary duty"), *aff'd*, 658 B.R. 783 (D. Del. 2024).  *Great Hill*, the case Plaintiffs themselves cite (Opp. 48), underscores this pleading failure.  There, the plaintiff adequately alleged an aiding-and-abetting claim against, among other defendants, two private-equity sponsors of a company acquired by plaintiff.  *See Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *21 (Del. Ch. Nov. 26, 2014).  But the *Great Hill* complaint alleged in detail the specifics of emails, calls, and meetings with the sponsors, making it obvious that the sponsors had knowledge of major contract cancellations ahead of the merger.  *See id.* at *3-11.  That is hardly analogous to the generic and vague allegations here that Mr. Thadani generally monitored Lucky Bucks' financial condition.

## IV.   THE CLAIMS FOR ATTORNEY'S FEES, PUNITIVE DAMAGES, AND A DECLARATORY JUDGMENT SHOULD BE DISMISSED

34.    Plaintiffs concede that their purported claims for attorney's fees (Count Seven) and punitive damages (Count Eight) are not independent causes of action and that each requires an underlying substantive Georgia-law claim.  *See* Opp. 49.  Because no viable underlying cause of action exists, *see supra* §§ I-III, each of these ancillary claims fails, Mot. ¶ 61.  Plaintiffs also fail to respond to the argument that Count Three is their only claim that even purports to assert a Georgia-law claim against the Trive Defendants—and that §§ 544 and 550 of the Bankruptcy Code, the vehicles for asserting that claim, do not contain a provision for recovering attorney's fees or punitive damages.  *See* Mot. ¶ 61.

35.    As for Plaintiffs' purported claim under the Declaratory Judgment Act (Count Nine), they again concede by silence that the claim is not an independent cause of action.  *See* Mot. ¶ 62; Opp. 49; *see also Honeywell*, 2024 WL 492392, at *3 n.1.  That the DJA "is procedural only," *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 457 n.3 (3d Cir. 2019) (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937)), is simply a point of black-letter law—not an attempt to subject Plaintiffs to any sort of "Catch-22," Opp. 49.

## V.   THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

36.    The Court should dismiss with prejudice.  Plaintiffs' perfunctory request for leave to amend (Opp. 50) does not state what new allegations they could or would add, having already completed their pre-suit "comprehensive investigation into prepetition conduct," Compl. ¶ 102, and having already received copies of the Trive Defendants' Rule 2004 productions, *see* Mot. ¶ 63. By offering no meaningful response on this topic, Plaintiffs have effectively "fail[ed] to contest [the] issue" and waived any opposition.  *Honeywell*, 2024 WL 492392, at *3 n.1.

**CONCLUSION**

37.     The Court should dismiss the claims against the Trive Defendants, with prejudice.

Dated: December 4, 2025
        Wilmington, Delaware

Respectfully submitted,


**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**

Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
Charles C. Bridge (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
philip.anker@wilmerhale.com
ross.firsenbaum@wilmerhale.com
charles.bridge@wilmerhale.com

Joel Millar (admitted *pro hac vice*)
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363
joel.millar@wilmerhale.com

*Attorneys for Defendants Trive Capital*
*Management LLC, Trive Capital Fund III LP,*
*Trive Capital Fund III-A LP, TCFIII Luck LP,*
*TCFIII Luck SPV LP, TCFIII Luck*
*Acquisition LLC, TCFIII Luck Holdings LLC,*
*Quantum Gaming Corp., Southern Star*
*Gaming, LLC, and Shravan Thadani*


**PACHULSKI STANG ZIEHL**
   **& JONES LLP**

By: */s/ Laura Davis Jones*
Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 North Market Street, 17th Floor
Wilmington, DE 19801
(t) (302) 652-4100
(f) (302) 652-4400
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Defendants Trive Capital*
*Management LLC, Trive Capital Fund III LP,*
*Trive Capital Fund III-A LP, TCFIII Luck LP,*
*TCFIII Luck SPV LP, TCFIII Luck*
*Acquisition LLC, TCFIII Luck Holdings LLC,*
*Quantum Gaming Corp., Southern Star*
*Gaming, LLC, and Shravan Thadani*