# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUCKY BUCKS, LLC, *et al.*,<br><br>     Debtors. | Chapter 11<br><br>Case No. 23-10758 (KBO) |
| LB NEWHOLDCO, LLC and LUCKY BUCKS, LLC,<br><br>     Plaintiffs,<br><br>   v.<br><br>TRIVE CAPITAL MANAGEMENT LLC, TRIVE CAPITAL FUND III LP, TRIVE CAPITAL FUND III-A LP, TCFIII LUCK LP, TCFIII LUCK SPV LP, TCFIII LUCK ACQUISITION LLC, TCFIII LUCK HOLDINGS LLC, QUANTUM GAMING CORP., SOUTHERN STAR GAMING LLC, SHRAVAN THADANI, ANIL DAMANI, LBV27, LLC, LUCKY BUCKS VENTURES, INC., SHAFIK KASSAM, JAMES BOYDEN, RYAN BOUSKILL, MANU SEKHRI, SEVEN ACES HOLDINGS ULC AND HASSAN IJAZ,<br><br>     Defendants. | Adversary Proceeding<br><br>Adv. Pro. No. 25-50965 (KBO) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT SHAFIK KASSAM'S MOTION TO DISMISS COMPLAINT AND JOINDER IN CO-DEFENDANTS' REPLY BRIEFS IN SUPPORT OF MOTIONS TO DISMISS**

**WOMBLE BOND DICKINSON (US) LLP**
Morgan L. Patterson
Marcy J. McLaughlin Smith
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone  (302) 252-4320
Facsimile:  (302) 252-4330
Email:  morgan.patterson@wbd-us.com
   marcy.smith@wbd-us.com

**GARLAND, SAMUEL, & LOEB, P.C.**
Amanda R. Clark Palmer
3151 Maple Drive
Atlanta, Georgia 30305
Telephone: (404) 262-2225
Facsimile:  (404) 365-5041
Email: aclark@gsllaw.com

*Counsel for Shafik Kassam*

Dated:  December 4, 2025
   Wilmington, Delaware

WBD (US) 4936-3143-5643v5

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    A.    The Court Should Enforce the Release as Drafted. ................................................2

    B.    Plaintiffs Fail to Overcome the Plain Language that Mr. Kassam Owed No Fiduciary Duties under the HoldCo LLC Agreement .............................................3

    C.    Plaintiffs Fail to Overcome Baseline Georgia Law that Officers Owe No Fiduciary Duties ......................................................................................................8

    D.    Plaintiffs Fail to Identify Facts Showing They Adequately Pled Their Fiduciary Duty Claims ............................................................................................10

    E.    The Attorney's Fees and Punitive Damages Claims Fail Because the Underlying Claims Fail ...............................................................................................12

    F.    Plaintiffs Do Not Dispute Their Claim for Declaratory Judgment is Duplicative ...............................................................................................................12

    G.    Mr. Kassam Joins in the Arguments and Positions Taken by Co-Defendants in Their Reply Briefs .................................................................................................13

CONCLUSION .....................................................................................................................1

WBD (US) 4936-3143-5643v5

## **TABLE OF AUTHORITIES**

CASES

*AT&T Corp. v. Lillis*,
  953 A.2d 241 (Del. 2008) .................................................................................................... 3

*Giesecke+Devrient Mobile Sec. Am., Inc. v. Nxt-ID, Inc.*,
  No. CV 2020-0664-PAF, 2021 WL 982597, (Del. Ch. Mar. 16, 2021) ................................. 6

*In re Am. Bus. Fin. Servs., Inc.*,
  362 B.R. 149 (Bankr. D. Del. 2007) ................................................................................... 14

*In re Bayou Steel BD Holdings, L.L.C.*,
  642 B.R. 371 (Bankr. D. Del. 2022) ......................................................................... 5, 6, 10

*In re Beaulieu Grp., LLC*,
  No. 17-41677-BEM, 2021 WL 4469928 (Bankr. N.D. Ga. Sept. 29, 2021) .......................... 10

*In re Cadira Grp. Holdings, LLC Litig.*,
  No. CV 2018-0616-JRS, 2021 WL 2912479 (Del. Ch. July 12, 2021) ........................ 6, 7, 8, 9

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ..................................................................................... 5

*In re Nortel Networks Inc.*,
  No. 09-10138(KG), 2016 WL 2584092, (Bankr. D. Del. May 2, 2016) ................................ 3

*In re SRC Liquidation LLC*,
  581 B.R. 78 (D. Del. 2017) ................................................................................................. 13

*Jhaveri v. K1 Inv. Mgmt. LLC*,
  No. 2024-0410-LWW, 2025 WL 1779507 (Del. Ch. June 27, 2025) ..................................... 3

*Lonergan v. EPE Holdings, LLC*,
  5 A.3d 1008, (Del. Ch. 2010) ............................................................................................... 4

*Maric Healthcare, LLC v. Guerrero*,
  2024 WL 2993336 (Del. Ch. 2024) ...................................................................................... 9

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ................................................................................................... 4

*New Enter. Assocs. 14, L.P. v. Rich*,
  295 A.3d 520 (Del. Ch. 2023) .............................................................................................. 5

*Osios LLC v. Tiptree, Inc.*,
  No. 2023-0589-NAC, 2024 WL 2947854, at *8 (Del. Ch. June 12, 2024) ...................... 6, 7, 8

*Song v. eGPS Sols. I, Inc.*,
  899 S.E.2d 530 (Ga. App. 2024) ........................................................................................ 11

*State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*,
  No. 18-1806-MN-SRF, 2021 WL 1929365 (D. Del. May 13, 2021) .................................... 14

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) .................................................................................................. 5

STATUTES

Del.Code Ann. tit. 8, § 102(b)(7) ................................................................................................... 4

RULES

Fed. R. Bankr. P. 7012(b) .............................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

WBD (US) 4936-3143-5643v5

Shafik Kassam respectfully submits this joinder and reply brief in support of his motion to dismiss the Complaint [D.I. 1] pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b) [D.I. 14] (the "<u>Motion to Dismiss</u>").

### **INTRODUCTION**

The Joint Chapter 11 Plan[1] broadly released Mr. Kassam from all claims, causes of action and resulting liability with one carve-out. The Release carves out "Claims and liabilities resulting therefrom," as related to fraud or willful misconduct but defines "Claims" as defined as a "claim … against an OpCo Debtor[.]"  Accordingly, the carve-out is inapplicable here and the Motion to Dismiss should be granted in its entirety.

Plaintiffs also fail to allege Mr. Kassam owed HoldCo LLC any fiduciary duties.  HoldCo LLC's exculpation clause could not be clearer: "[t]o the fullest extent permitted by law, a Covered Person (other than Officers, employees and expressly authorized agents) has no *duties* (including *fiduciary duties*), that would otherwise exist at law, in equity or otherwise, to the Company…" HoldCo LLC Agreement § 9.03 (emphases added).  Plaintiffs' contorted interpretation to the contrary makes three errors.  It first conflates tort-based fiduciary duties with the contract-based duty of good faith and fair dealing, despite caw law forbidding such conflation.  Second, Plaintiffs rely on inapposite caselaw interpreting the fiduciary duties of *corporate* officers and directors, even though corporations cannot waive the duty of loyalty, while limited liability companies can. Third, Plaintiffs identify cases where the exculpation clause did not explicitly state fiduciary duties are waived—which Delaware law requires—and even though HoldCo LLC Agreement's exculpation clause plainly does.

---

[1] Unless otherwise defined herein, capitalized terms used herein but not defined are ascribed the definitions given to them in the Complaint.

Plaintiffs likewise fail to allege Mr. Kassam owed LB LLC any fiduciary duties under Georgia law where the baseline rule is that officers (like Mr. Kassam) do not owe any fiduciary duties to limited liability companies. The LB LLC Agreement only imposes fiduciary duties on officers to the extent any are owed under Georgia law (which is none). And while Georgia law imposes fiduciary duties on managers, Plaintiffs fail to allege Mr. Kassam exercised management duties over LB LLC as a manager of LB LLC.

Finally, even if Plaintiffs somehow overcome the Plan's broad Release, the HoldCo LLC Agreement's clear exculpation clause, and Georgia law's baseline rule that officers owe no fiduciary duties, Plaintiffs' allegations against Mr. Kassam for breach of fiduciary duty are conclusory and fail to supply even the most basic details of the alleged nature of his breach.

In sum, Plaintiffs fail to state a claim for relief against Mr. Kassam and their claims against him should be dismissed with prejudice.

## ARGUMENT

A.     **The Court Should Enforce the Release as Drafted.**

As set forth in Mr. Kassam's Motion to Dismiss, the Release contained in the Plan is clear on its terms and should be enforced. Specifically, the Release contained a carve-out which preserved only "Claims and liabilities resulting therefrom" for fraud or willful misconduct, with the term "Claim" defined to mean a "claim … against an OpCo Debtor." Plan art. I.A., VIII.A.2. Plaintiffs assert that the Release must be interpreted to ignore this limitation and instead to carve out *any* claim for fraud or willful misconduct against Released Parties; because with any other interpretation, Plaintiffs would be releasing themselves, which they claim is "nonsensical." Such an argument is meritless because the Court should interpret the language as written.

Plaintiffs' claims against Released Parties (including Mr. Kassam—who Plaintiffs do not

2

dispute is a Released Party) have been released. This adversary proceeding arises out of OpCo Debtors' own claim that certain Released Parties engaged in fraud, willful misconduct, or gross negligence and therefore, does not fall within the carefully crafted carve-out. This Court should enforce the Release as written. *See AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) (finding courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty); *see also Jhaveri v. K1 Inv. Mgmt. LLC*, No. 2024-0410-LWW, 2025 WL 1779507, at **11, 16 (Del. Ch. June 27, 2025) (dismissing released claims with prejudice because release was unambiguous and no carveouts applied); *In re Nortel Networks Inc.*, No. 09-10138(KG), 2016 WL 2584092, at *5 (Bankr. D. Del. May 2, 2016) ("[T]he Settlement Agreement is unambiguous and provides for the release of the EMEA Debtors from the claims the U.S. Debtors asserted against them in the Third–Party Complaint. Accordingly, the Third–Party Complaint will be dismissed with prejudice.").

**B.     Plaintiffs Fail to Overcome the Plain Language that Mr. Kassam Owed No Fiduciary Duties under the HoldCo LLC Agreement**

Plaintiffs also fail to overcome the HoldCo LLC Agreement's plain language that "[t]o the fullest extent permitted by law, a Covered Person (other than Officers[2], employees and expressly authorized agents) has no duties (including fiduciary duties), that would otherwise exist at law, in equity or otherwise, to the Company…" HoldCo LLC Agreement § 9.03. As an initial matter, Plaintiffs do not dispute Mr. Kassam is a "Covered Person."[3] Thus, section 9.03's exculpation

---

[2] Plaintiffs do not allege or argue Mr. Kassam was an officer of HoldCo LLC. *See* Compl. ¶ 35.

[3] Covered Person is defined as "(x) any Manager, any Member, any Affiliate of a Member, and any of their respective officers, directors, shareholders, partners, members, trustees, beneficiaries, employees or agents and (y) any Officer, committee member, employee or expressly authorized agent of the Company or its Subsidiaries." HoldCo LLC Agreement § 9.02(a).

provision applies to him.

Despite the exculpation provision's clear language that Mr. Kassam, as a Covered Person, owed no fiduciary duties to HoldCo LLC, Plaintiffs make three arguments attempting to overcome this plain language, but none persuade.

First, Plaintiffs conflate the implied covenant of good faith and fair dealing with fiduciary duties. The former is a contractual duty, the latter a tort duty. "The nature of the implied covenant of good faith and fair dealing is quite different from the congeries of duties that are assumed by a fiduciary." *Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008, 1019 (Del. Ch. 2010) (internal quotation marks omitted). "To use the implied covenant to replicate fiduciary review 'would vitiate the limited reach of the concept of the implied duty of good faith and fair dealing.'" *Id.* (*quoting Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)). Plaintiffs' attempt to re-introduce fiduciary review "through the backdoor of the implied covenant…fails to state a colorable claim." *Lonergan*, 5 A.3d at 1019.

Second, section 9.02(b)'s carveout for fraud, willful misconduct, or willful breach of the Agreement does not show the duty of loyalty was retained. Plaintiffs cite in support *In re HH Liquidation, LLC*, 590 B.R. 211, 272 (Bankr. D. Del. 2018), but that case relies on and cites *Stone v. Ritter*, 911 A.2d 362, 369–70 (Del. 2006). *Stone* is a corporation case, not a limited liability company case. *See id.* at 367, *citing* Del. Code Ann. tit. 8, § 102(b)(7). This distinction is critical because corporations cannot "eliminate or limit the liability" for the breach of the "duty of loyalty," *id.*, while limited liability companies can "fully eliminate any duties existing at law or in equity, including fiduciary duties," *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 580 (Del. Ch. 2023). Thus, Plaintiffs' argument that rests on *In re HH Liquidation, LLC* fails.

Third, Plaintiffs rely on this Court's decision in *In re Bayou Steel BD Holdings, L.L.C.*,

4

642 B.R. 371, 404 (Bankr. D. Del. 2022), but the exculpation language in that case did not include the words "duty" or "fiduciary duties":

> Except as otherwise required by applicable law and as expressly set forth in this Agreement, no Director, Officer or Member shall have any personal liability whatsoever in such Person's capacity as Director, Officer or Member, whether to the Company, to any other Director, Officer or Member, to the creditors of the Company or to any other third party, for the debts, liabilities, commitments or any other obligations of the Company or for any losses of the Company.

*Id.* at 402. This Court in *Bayou Steel* further noted that "[e]xamples of plain and unambiguous exculpation language" could be found in other affiliated limited liability company agreements, showing "[t]he drafters knew how to limit liability for breach of fiduciary duty in a clear fashion but did not do so" here. *Id.* at 404.

In this case, by contrast, the HoldCo LLC Agreement clearly and unambiguous exculpates for fiduciary duty liability by explicitly using the term "fiduciary duty": "To the fullest extent permitted by law, a Covered Person (other than Officers, employees and expressly authorized agents) has *no duties* (including *fiduciary duties*)…" HoldCo LLC Agreement § 9.03 (emphases added). Moreover, while the agreement in *Bayou Steel* also carved out indemnification for acts in bad faith, *id.* at 404–05, the term "bad faith" is not in the HoldCo LLC Agreement. Indeed, Plaintiffs incorrectly claim the HoldCo LLC Agreement "explicitly preserves the duty not to engage in…*bad faith conduct*." D.I. 29, pp. 47–48 (emphasis added). The HoldCo LLC Agreement does not explicitly preserve any such duty. "Court[s] will not insert terms that do not exist[.]" *Giesecke+Devrient Mobile Sec. Am., Inc. v. Nxt-ID, Inc.*, No. CV 2020-0664-PAF, 2021 WL 982597, at *10 (Del. Ch. Mar. 16, 2021).

Plaintiffs also cite *In re Cadira Grp. Holdings, LLC Litig.*, No. CV 2018-0616-JRS, 2021 WL 2912479, at *11 (Del. Ch. July 12, 2021), but that case is also distinguishable. As the Court

5

in *Osios LLC v. Tiptree, Inc.*, No. 2023-0589-NAC, 2024 WL 2947854, at *8 (Del. Ch. June 12, 2024) noted, the particular structure of the exculpation clause in the *Cadira Group* agreement showed fiduciary duties had not been eliminated.  The exculpation clause in *Cadira Group* was followed in the next sentence by a provision that "confusingly eliminated only 'claim[s]' against members and managers that did not involve 'bad faith, gross negligence, willful misconduct or actual fraud[.]'" *Osios LLC*, 2024 WL 2947854, at *8 (*quoting In re Cadira Grp. Holdings, LLC Litig.*, 2021 WL 2912479, at *3).  The juxtaposition of the exculpation clause and the immediately following carveout did not "evince[e] a plain and unambiguous intent fully to displace traditional fiduciary duties." *Id.* (internal quotation marks omitted).

In contrast to *Cadira Group*, the exculpation language in *Osios LLC* "ma[de] plain" that the defendant "owes no fiduciary duties":

> To the fullest extent permitted by law, including Section 18-1101(c) of the [LLC] Act, and notwithstanding any other provision of this Agreement or applicable provisions of law or equity or otherwise, the parties hereto hereby agree that each Indemnified Person *shall not owe any fiduciary duties* to the Company, any Member or any other person or entity party to otherwise bound by this Agreement ...."

*Osios LLC*, 2024 WL 2947854, at *7 (emphasis added).  The court in *Osios LLC* also rejected the plaintiff's argument that a separate exculpation provision, which carved out losses arising from fraud, gross negligence, or willful misconduct, "reimpose[d] fiduciary duties" on the defendant, *id.* at *8, just as Plaintiffs argue here.  The court focused on the language that "Indemnified Person[s]" "shall not owe any fiduciary duties," both to "[t]he fullest extent permitted by law" and "notwithstanding any other provision" of the LLC agreement. *Id.*  This language, the court held, notwithstanding the carveout in another section, evinced a clear and unambiguous intent to displace traditional fiduciary duties. *Id.*

6

The language of the HoldCo LLC Agreement similarly evinces an unambiguous intent to not impose any fiduciary duties on Mr. Kassam as shown by the chart below. The exculpating language the *Osios LLC* court found to eliminate any fiduciary duties is very similar to the exculpating language in the HoldCo LLC Agreement.

| Agreement in *Osios LLC* | HoldCo LLC Agreement (§ 9.03) |
|---|---|
| "[t]o the fullest extent permitted by law, including Section 18-1101(c) of the [LLC] Act," | "To the fullest extent permitted by law," |
| "shall not owe any fiduciary duties" | "has no duties (including fiduciary duties)" |
| "notwithstanding any other provision of [the LLC] Agreement[.]" | "except as expressly provided by this Agreement"[4] |

Moreover, like in *Osios LLC* (and unlike in *Cadira Group*), the language in the HoldCo LLC Agreement carving out claims based on fraud, willful misconduct, and willful breach exists in a different provision from the provision eliminating fiduciary duties. *Compare* § 9.02(b) to § 9.03. Also like in *Osios LLC* (and unlike in *Cadira Group*), the HoldCo LLC Agreement does not expressly carve out claims for bad faith (despite Plaintiffs' misconstrual as noted earlier in this section), which is part of the *Cadira Group* court's justification for holding fiduciary duties were not eliminated. 2021 WL 2912479 at *12.

Finally, Plaintiffs cite *Maric Healthcare, LLC v. Guerrero*, 2024 WL 2993336, at *6 (Del. Ch. 2024), but that case is easily distinguishable because the LLC agreement stated that "[t]he Manager in his capacity as Manager shall be subject to the fiduciary duties that would be due by

---

[4] Indeed, the HoldCo LLC Agreement "expressly provides" that officers "shall possess any and all fiduciary duties…." HoldCo LLC Agreement § 5.02(b). This supports the understanding that unless "expressly provided by th[e] Agreement[,]" *id.*, § 9.03, no fiduciary duties are owed "notwithstanding any other provision of [the Agreement], *Osios LLC*, 2024 WL 2947854, at *8. As noted above in footnote two, Plaintiffs do not allege or argue Mr. Kassam was an officer of HoldCo LLC.

7

an officer or a director of a Delaware corporation to such corporation."

In sum, the carefully crafted language in the HoldCo LLC Agreement evinces a plain and unambiguous intent to fully displace traditional fiduciary duties. As Mr. Kassam owed no fiduciary duties to HoldCo, Plaintiffs' breach of fiduciary duty claim under Delaware law must be dismissed with prejudice.

C.  **Plaintiffs Fail to Overcome Baseline Georgia Law that Officers Owe No Fiduciary Duties**

Plaintiffs likewise fail to adequately allege Mr. Kassam owed a fiduciary duty to Lucky Bucks under Georgia law. Contrary to Plaintiffs' assertion, the LB LLC Agreement does not "explicitly impose[] fiduciary duties on officers." D.I. 29, p. 51. The LB LLC Agreement states that "[e]ach Officer of the Company shall possess any and all fiduciary duties *that are owed by officers* and other persons *pursuant to the Act*."[5] LB LLC Agreement § 4.1. Put differently, the LB LLC Agreement does not independently impose a fiduciary duty on Lucky Bucks officers. The LB LLC merely imposes any fiduciary duties already created by the GLLC—to the extent any are owed—which are none. While the Georgia Limited Liability Company Act may impose fiduciary duties on managers, O.C.G.A. § 14-11-305(4)(B), the same is not true for officers, *In re Beaulieu Grp., LLC*, No. 17-41677-BEM, 2021 WL 4469928, at *14 (Bankr. N.D. Ga. Sept. 29, 2021). "While the fiduciary duties of managers of an LLC are set forth in the Georgia Limited Liability Company Act, the same is not true for the officers of an LLC." *Id.*; *see id.* at *15 ("[T]he Court concludes officers of an LLC do not owe fiduciary duties to the LLC.")

Indeed, on December 28, 2020, when the LB LLC Agreement was executed, no Georgia

---

[5] The "Act" is the Georgia Limited Liability Company Act ("GLLC"). *Id.* § 1.1.

state or federal court had expressly opined whether the GLLC imposes fiduciary duties on officers.[6] It was only with the court's opinion in *Beaulieu Group*, in September 2021, that there was clarity that the GLLC does not independently create fiduciary duties for officers. Thus, at the time the LB LLC Agreement was drafted and executed in 2020, it makes perfect sense the drafters would reserve the issue for such time as a court would determine whether the GLLC imposes fiduciary duties on officers.

Plaintiffs' attempt in a footnote to twist *Beaulieu Group* to support their position fails. The court in *Beaulieu Group* held the complaint "sufficiently allege[d] the existence of fiduciary duties by those alleged to have served on the Board [of Managers]," because it "had control over Beaulieu, including the power to appoint officers and to set the duties and authority of officers." *Id.* at **14, 15. By contrast, Plaintiffs here do not allege Mr. Kassam had control over Lucky Bucks, had the power to appoint officers, or the power to set the duties and authority of officers. Plaintiffs do not allege Mr. Kassam served on Lucky Bucks' board of managers (there was none) and do not allege HoldCo delegated management powers to any officers, including Mr. Kassam.

On the contrary, Plaintiffs allege the acts by Mr. Kassam were undertaken in his capacity as a HoldCo board member—and not as an officer of Lucky Bucks. *See* Compl. ¶ 78 (alleging "Kassam, Boyden and Sekhri—the *three members of the HoldCo Board*—executed a written consent (the 'Lucky Bucks Consent') approving a distribution of $203,599,943.53 to be made on July 30, 2021 from Lucky Bucks to HoldCo…") (emphasis added); *Id.* ¶ 79 ("There was no business rationale, much less a compelling one, considered by the *HoldCo Board or its members* in connection with approving the OpCo Distribution.") (emphasis added); *Id.* ¶ 89 (describing the

---

[6] Mr. Kassam's counsel has found no such case and the parties in their briefing have identified none.

9

"members of the HoldCo Board['s]" alleged incentive for approve the distribution).

Finally, Plaintiffs' citation to *Song v. eGPS Sols. I, Inc.*, 899 S.E.2d 530, 540 (Ga. App. 2024) does not change the conclusion that Mr. Kassam lacked a fiduciary duty to Lucky Bucks. *Song* merely holds that "a managing member" owes fiduciary duties, *see id.*, but Plaintiffs do not allege Mr. Kassam was a managing member of Lucky Bucks. *Song* is thus inapposite.

Plaintiffs ultimately fail their burden to allege the existence of fiduciary duties under Georgia law. While the baseline under Delaware law is that officers owe fiduciary duties, the baseline under Georgia law is that officers do not. Thus, Plaintiffs carry a higher burden under Georgia law and must allege the LB LLC Agreement created fiduciary duties for officers, which Plaintiffs here have failed to do. Accordingly, Plaintiffs' count six against Mr. Kassam must be dismissed.

D.   **Plaintiffs Fail to Identify Facts Showing They Adequately Pled Their Fiduciary Duty Claims**

Even assuming Plaintiffs overcome the Plan's broad release and the HoldCo LLC Agreement's and LB LLC Agreement's exculpation clauses, Plaintiffs' fiduciary duty claims still fail as inadequately pled. Most of Plaintiffs' arguments in opposition address Mr. Kassam's codefendants and fail to show how the Complaint adequately alleges claims against him.

First, Plaintiffs argue that Lucky Bucks sold certain, unidentified COAMs to third parties, which then, using unidentified sham players to increase the monthly revenue rate for those COAMs, were resold to Lucky Bucks at unalleged higher costs. *See* Compl. ¶ 56. But Plaintiffs merely state this allegation only on 'information and belief,' despite having litigated these facts and legal issues for several years now in a multitude of forums. Plaintiffs fail to identify any COAM that was purchased at an inflated price, fail to articulate which party had which role in the

10

alleged scheme, merely alleging "Damani, Kassam, and their agents[,]" and fail to explain how sham players increased monthly revenue rates and by how much. *See id.* While Plaintiffs allege Lucky Bucks purchased COAMs between October 2020 and June 2021, Plaintiffs fail to connect the purchased COAMs with any allegedly manipulated COAMs. *See id.* ¶ 57. Plaintiffs further allege Lucky Bucks' CFO expressed concern in February 2021 that Lucky Bucks overpaid by 63%, but again fail to link this allegation to Mr. Kassam. *Id.* ¶ 59. Plaintiffs allege that the largest deals were executed in June 2021, far after the CFO's alleged concern in February 2021. It is implausible that the CFO's alleged concern in February 2021 was related to any allegedly manipulated COAM.

Second, Plaintiffs' claim that Mr. Kassam misrepresented Mr. Damani's involvement in Lucky Bucks is inadequately pled. *See* D.I. 29, p. 53 & fn. 103. Plaintiffs' sole citation to the Complaint is paragraph four, but paragraph four does not mention Mr. Kassam by name, let alone allege any alleged misrepresentation. Even ignoring this deficiency, Plaintiffs' allegations are conclusory: they do not allege to whom Mr. Kassam mispresented Mr. Damani's involvement, the contents of any misrepresentation, or when such misrepresentation was made. On the other hand, Plaintiffs allege Trive knew Damani was involved in the operations of Lucky Bucks. Compl. ¶ 120. Plaintiffs also do not explain how Mr. Kassam misrepresenting Mr. Damani's alleged involvement in the business to lenders breached a fiduciary duty to Lucky Bucks.

Third, Plaintiffs fail to allege sufficient facts that Mr. Kassam engaged in self-dealing. As an initial matter, of the $203.6 million alleged distribution, Plaintiffs allege Mr. Kassam received a $50,000 bonus, which is approximately 0.025% of the distribution. Such a minor percentage does not support a plausible claim for self-dealing. In addition, Plaintiffs do not allege Mr. Kassam awarded himself the $50,000 bonus, but rather that Trive directed Mr. Kassam to be given the

11

$50,000 bonus. Compl. ¶ 35. In paragraphs 80 to 82 of the Complaint, Plaintiffs describe how the distribution was distributed among various parties, but *not* to Mr. Kassam. Plaintiffs also do not allege Mr. Kassam approved the distribution in anticipation of being awarded a bonus, that he suspected he would be awarded a bonus if he approved the distribution, or even how long after the approval he was awarded the bonus. *In re SRC Liquidation LLC*, 581 B.R. 78, 92–93 (D. Del. 2017) (finding no error in bankruptcy court's determination of no self-dealing because "[t]he Complaint does not allege that Defendants were on both sides of the Acquisition or expected to derive financial benefit in the sense of self-dealing.") Plaintiffs merely allege two data points—(1) Mr. Kassam approved the distribution; and (2) Mr. Kassam at some later point received a $50,000 bonus—and asks the Court to fill in the blanks. These conclusory allegations are not sufficient to allege Mr. Kassam engaged in self-dealing.

In sum, even if Plaintiffs escape the Plan's Release and overcome the HoldCo LLC Agreement's and LB LLC Agreement's exculpation clauses, Plaintiffs still fail to allege sufficient facts that Mr. Kassam breached any fiduciary duties. Counts four and six should be dismissed as to Mr. Kassam.

### E. The Attorney's Fees and Punitive Damages Claims Fail Because the Underlying Claims Fail

Plaintiffs do not deny their claims for attorneys' fees and punitive damages rest entirely on their substantive claims against Mr. Kassam. As Plaintiffs have released all claims against Mr. Kassam and fail to state a claim for breach of fiduciary duty, the Court should also dismiss Plaintiffs' claims for attorneys' fees and punitive damages.

### F. Plaintiffs Do Not Dispute Their Claim for Declaratory Judgment is Duplicative

Plaintiffs' opposition brief does not dispute that their claim for declaratory relief is

WBD (US) 4936-3143-5643v5

duplicative of their other claims. "Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action." *State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, No. 18-1806-MN-SRF, 2021 WL 1929365, at *8 (D. Del. May 13, 2021) (citation omitted). Moreover, insofar as the Court dismisses Plaintiffs' underlying claims against Mr. Kassam, so too should it dismiss the claim for declaratory relief. *See In re Am. Bus. Fin. Servs., Inc.*, 362 B.R. 149, 166 (Bankr. D. Del. 2007) ("The Court will dismiss the request for declaratory relief related to the claims against Ocwen which are dismissed by the Court.")

### G. Mr. Kassam Joins in the Arguments and Positions Taken by Co-Defendants in Their Reply Briefs

Finally, Mr. Kassam adopts, and incorporates as if set forth fully herein, as applicable, the arguments made by his above-captioned Co-Defendants in their respective reply briefs.

**CONCLUSION**

For the foregoing reasons, Mr. Kassam respectfully requests the entry of an order dismissing the claims against Mr. Kassam with prejudice.

Dated: December 4, 2025
Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Morgan L. Patterson*
Morgan L. Patterson (DE Bar No. 5388)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone  (302) 252-4320
Facsimile:  (302) 252-4330
Email: morgan.patterson@wbd-us.com
marcy.smith@wbd-us.com

-and-

**GARLAND, SAMUEL, & LOEB. P.C.**
Amanda R. Clark Palmer
3151 Maple Drive
Atlanta, Georgia 30305
Telephone: (404) 262-2225
Facsimile:  (404) 365-5041
Email: aclark@gsllaw.com

*Counsel for Shafik Kassam*